UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JEROME BRAYBOY,

Plaintiff,

v. 3:26-CV-00303 (AMN/ML)

BATESTROY, FRANK GRIFFITHS, and ROBERT CUTONE[1]

Defendant.

---

APPEARANCES: OF COUNSEL:

Jerome Brayboy
Plaintiff, *Pro Se*
6 Serrell Ave
Binghamton, New York 13905

MIROSLAV LOVRIC, United States Magistrate Judge

## **ORDER and REPORT-RECOMMENDATION**

The Clerk has sent an amended *pro se* complaint in the above captioned action together with an application to proceed *in forma pauperis* ("IFP") by Jerome Brayboy ("Plaintiff") to the Court for review. (Dkt. No. 2; Dkt. No. 7.) Along with the Amended Complaint, Plaintiff filed four exhibits: three images depicting text messages between Plaintiff and one or more Defendants, and a video recording of a conversation related to Plaintiff's employment suspension and termination. This digital media is held by the Clerk's office and is not available for public view. This Court has reviewed the Amended Complaint and all exhibits in preparing

---

[1] Defendant Robert Cutone was not named in Plaintiff's original complaint, so the Clerk is directed to add his name to the docket.

this Order and Report-Recommendation.

For the reasons discussed below, this Court (1) grants Plaintiff's *in forma pauperis* application (Dkt. No. 2), and (2) recommends that Plaintiff's Amended Complaint be dismissed in its entirety with leave to replead. (Dkt. No. 7.)

## I. BACKGROUND

Construed as liberally[2] as possible, Plaintiff's Amended Complaint alleges a violation of Title VII of the Civil Rights Act of 1964. Plaintiff alleges discrimination based on race by a private employer, including unequal terms and conditions of employment, retaliation, and termination. (Dkt. No. 7 at 1.)

Plaintiff alleges that he was employed as a delivery truck driver for Defendant Batestroy, where Defendant Griffiths and Defendant Cutone work in management roles. (Dkt. No. 7 at 1-2.) On or about May 7, 2025, Plaintiff experienced mechanical problems while out for a delivery in a leased truck, resulting in damage to the vehicle from striking a barricade or "road cement block." (*Id*. at 2.) In connection with the incident, Defendants suspended Plaintiff without pay and then terminated his employment. (*Id*. at 1.) As described in Plaintiff's filing, Defendants had suspended him three times for various incidents prior to his termination but imposed no punishment on other employees for similar or worse infractions. (*Id*. at 2-3.) Plaintiff further alleges that Defendants Griffiths and Cutone "cursed me out" during these interactions. (*Id*. at 2.)

Plaintiff seeks monetary damages for this discriminatory treatment. (*Id*. at 4.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee,

---

[2] The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[3] After reviewing Plaintiff's IFP application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed IFP is granted.[4]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis

---

[3] The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[4] Plaintiff is reminded that, although his IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees. Misuse of the IFP process by a litigant, such as repetitive filing of frivolous lawsuits, may result in the denial of a request to proceed IFP.

added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

**IV. ANALYSIS**

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Amended Complaint with this principle in mind, I recommend that all causes of action be dismissed for failure to allege Plaintiff's compliance with the exhaustion

requirements of Title VII.

**A. Title VII**

"A common requirement of Plaintiff's Title VII claims . . . is that []he must plausibly allege that the actions taken against [him] were related to a protected characteristic." *Collings v. State Univ. of New York at Cortland*, 24-CV-0534, 2025 WL 904649, at *7 (N.D.N.Y. Mar. 25, 2025) (Suddaby, J.). Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2 (a)(1).

Claims brought pursuant to Title VII are required to meet certain conditions precedent to filing in federal court and must adhere to certain time limits. Specifically, in New York State, a plaintiff must file a complaint with the Equal Employment Opportunity Commission ("EEOC") or the New York State Division of Human Rights ("NYSDHR") within 300 days of the alleged discriminatory or retaliatory conduct. *King v. Aramark Servs. Inc.*, 96 F.4th 546, 559 (2d Cir. 2024). Discrete adverse events that occurred more than 300 days before that complaint are time-barred and cannot constitute a basis for a plaintiff's claim of discrimination or retaliation. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015) (noting that discrete retaliatory or discriminatory acts occur on the day they happen and are not actionable if they occur outside of the relevant time period [which is 300 days in New York], "even when they are related to acts alleged in timely filed charges").

Plaintiff's Amended Complaint does not allege compliance with this exhaustion requirement and Plaintiff has not attached a right-to-sue letter from the EEOC. (Dkt. No. 7.) As a result, the Court is unable to determine whether Plaintiff has obtained a right-to-sue letter from

the EEOC.[5] *See Matthews v. CSX Trans.*, No. 5:17-CV-448 (GTS/ATB), 2017 WL 3835868, at *2 (N.D.N.Y. 6, 2017), *rep't and rec. adopted*, 2017 WL 3736786 (N.D.N.Y. Aug. 29, 2017) (recommending remand where Plaintiff did not provide right to sue letter). For that reason, this Court recommends that Plaintiff's Amended Complaint be dismissed. *See Grey v. Promenade Rehab & Care Ctr.*, 145 Fed. App'x 705 (2d Cir. 2005) (affirming dismissal where [i]t is plain from the face of Grey's complaint that she filed her federal suit without having received a right-to-sue letter from the EEOC.")

Plaintiff's Amended Complaint also names two individual Defendants, Frank Griffiths and Robert Cutone. It is well established, however, that "individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000). Therefore, dismissal of the Title VII claims against Defendants Griffiths and Cutone should be without leave to replead for failure to state a claim.[6] *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995))) ("It is well-established that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII.") (internal quotation marks omitted); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam) ("[I]ndividuals are not subject to liability under Title VII.").

---

5 This Court notes that Plaintiff's video exhibit includes audio of Plaintiff stating, "I'm going to the EOCC about this because this is like my third time being suspended . . ." This statement begins at the 3:20 mark of the recording.

6 If Plaintiff presents a viable federal claim against Defendant Batestroy, the Court may have supplemental jurisdiction over state law claims against Defendants Griffiths and Cutone. Individual liability may lie under New York State Human Rights Law upon a showing that either individual defendant actually participated in conduct giving rise to discrimination. *Calezno v. Waste Mgmt., Inc.*, No. 1:24-CV-1499 (AMN/PJE), 2025 WL 2700243, at *7 (N.D.N.Y. Aug. 26, 2025), *rep't and rec. adopted*, 2025 WL 2693776 (N.D.N.Y. Sept. 22, 2025).

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

Plaintiff may be able to show that he has complied with the exhaustion requirements of Title VII and thus should be afforded the opportunity to submit an amended complaint that includes a copy of any right-to-sue letter Plaintiff has received from the EOCC relative to the present claims. Therefore, given Plaintiff's *pro se* status, I recommend that Plaintiff be granted leave to replead.

If Plaintiff chooses to file an amended complaint, he should note that in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in

sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

This Court also notes that Plaintiff's Amended Complaint consists of numerous unnumbered paragraphs. (Dkt. No. 7.) Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *See Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted) (Stewart, M.J.), *rep't and rec. adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

Finally, Plaintiff is informed that any such amended complaint will replace the existing Amended Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**PLAINTIFF IS FURTHER ADVISED THAT HE SHOULD NOT SEEK TO FILE A MOTION TO FURTHER AMEND HIS COMPLAINT UNTIL THE DISTRICT COURT RULES ON THIS COURT'S RECOMMENDATIONS WITH RESPECT TO PLAINTIFF'S CURRENT AMENDED COMPLAINT. ANY AMENDED COMPLAINT**

**OR MOTION TO AMEND BEFORE THE DISTRICT COURT'S DECISION WITH RESPECT TO THIS COURT'S RECOMMENDATIONS WILL BE STRICKEN AS PREMATURE AND WILL NOT BE CONSIDERED BY THE COURT.**

As noted below, however, Plaintiff may file objections to this Court's recommendations.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is further

**ORDERED** that the Clerk of the Court shall add Defendant Robert Cutone to the docket, and it is further respectfully

**RECOMMENDED** that the District Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Title VII claim against Batestroy (Dkt. No. 7) pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED**, that the District Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Title VII claims against Frank Griffiths and Robert Cutone, and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8] Such objections shall be filed with the

---

[7] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[8] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to

Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: September 22, 2026
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2025 WL 904649
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Leslie Gail Eaton COLLINGS, Plaintiff,
v.
The STATE UNIVERSITY OF NEW YORK AT CORTLAND; and Mark Prus, in his personal capacity, Defendants.

5:24-CV-0534 (GTS/ML)
|
Signed March 25, 2025

**Attorneys and Law Firms**

LESLIE GAIL EATON COLLINGS, Plaintiff, Pro Se, 9 Cedar Street, Cortland, NY 13045.

HON. LETITIA A. JAMES, NEW YORK STATE ATTORNEY GENERAL, AIMEE COWAN, ESQ., Assistant Attorney General, Counsel for Defendants, 300 South State Street, Suite 300, Syracuse, NY 13202.

## DECISION and ORDER

GLENN T. SUDDABY, United States District Judge

***1** Currently before the Court, in this civil rights action filed by Leslie Gail Eaton Collings ("Plaintiff") against the State University of New York at Cortland ("SUNY Cortland") and Mark Prus (collectively, "Defendants"), are Defendants' motions to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 12, 35.) For the reasons set forth below, Defendants' motions are granted, Plaintiff's federal claims are dismissed with prejudice, and Plaintiff's state law claims are dismissed without prejudice to refilling in state court.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, in her Complaint, Plaintiff asserts seven claims: (1) a claim of discrimination based on her sex and age in violation of Title VII; [1] (2) a claim of a hostile work environment related to her sex in violation of Title VII; (3) a claim of retaliation for reporting discrimination and a hostile work environment in violation of Title VII; [2] (4) a claim of discrimination and retaliation based on her race and/or national origin in violation of the New York Human Rights Law ("NYSHRL"); (5) a claim of breach of implied contract in violation of New York law; (6) a claim of intentional infliction of emotional distress ("IIED") in violation of New York law; and (7) a claim of negligence and/or gross negligence in violation of New York law. (Dkt. No. 1.)

1 Plaintiff also alleges that she belongs to other protected classes based on her race and marital status, but she does not actually allege that Defendants discriminated against her on the basis of any of those attributes related to her Title VII claim. (Dkt. No. 1, at ¶¶ 25-32.)

2 Plaintiff includes within her allegations related to this cause of action that she "was treated differently from other non-disabled employees." (Dkt. No. 1, at ¶ 39.) This allegation does not appear to pertain to Plaintiff's retaliation claim related to her complaints of discrimination and hostile work environment, which are based in her sex and potentially age. Plaintiff does not allege facts regarding the nature of any discrimination based on disability.

**B. Parties' Briefing on Defendants' Motions to Dismiss**

**1. Defendant SUNY Cortland's Motion to Dismiss**

**a. Defendant SUNY Cortland's Memorandum of Law**

Generally, in its motion to dismiss Plaintiff's Complaint, Defendant SUNY Cortland makes seven arguments. (Dkt. No. 12, Attach. 1.) First, it argues that Plaintiff's Title VII discrimination claim must be dismissed for the following reasons: (a) because of timeliness requirements, Plaintiff cannot sustain a claim related to any alleged actions that took place before July 19, 2022, based on the date she filed her complaint with the New York State Division of Human Rights ("NYSDHR"); (b) to the extent such claims were implied, Plaintiff cannot sustain a claim under Title VII based on her age or marital status, because Title VII does not protect such categories, and, as to marital status, she has not alleged how she was discriminated against as a married woman sufficient to satisfy a "sex-plus" claim; and (c) Plaintiff has not pled facts to plausibly suggest discrimination based on either race or sex because she has not identified any comparators who were similarly situated to her. (*Id.* at 11-17.)

***2** Second, Defendant SUNY Cortland argues that Plaintiff's Title VII hostile work environment claim must be dismissed because the actions she alleges Defendants took against her do not rise to the required level of severity. (*Id.* at 18-20.)

Third, Defendant SUNY Cortland argues that Plaintiff's Title VII retaliation claim must be dismissed because none of the actions allegedly taken against her by Defendants rise to the level of a materially adverse action. (*Id.* at 20-23.)

Fourth, Defendant SUNY Cortland argues that Plaintiff's claim pursuant to the NYSHRL must be dismissed because Defendant SUNY Cortland is an agency of the State and therefore immune from suit for such claim. (*Id.* at 23-24.)

Fifth, Defendant SUNY Cortland argues that Plaintiff's claim for breach of contract should also be dismissed on the basis of the doctrine of sovereign immunity under the Eleventh Amendment to the U.S. Constitution. (*Id.* at 24-25.)

Sixth, Defendant SUNY Cortland argues that Plaintiff's claim for intentional infliction of emotional distress should be dismissed because such claim is barred given that Defendant SUNY Cortland is a government entity. (*Id.* at 26.)

Seventh, Defendant SUNY Cortland argues that Plaintiff's negligence claims should also be dismissed on the basis of the doctrine of sovereign immunity. (*Id.* at 26-27.)

**b. Plaintiff's Opposition Memorandum of Law**

Generally, in opposition to Defendant SUNY Cortland's motion, Plaintiff makes seven arguments. (Dkt. No. 21.) First, Plaintiff argues that her Title VII claims are not time-barred because the Equal Opportunity Employment Commission ("EEOC") provided her with a right-to-sue notice. (*Id.* at 6.)

Second, Plaintiff argues that she has sufficiently stated a claim for discrimination under Title VII based on her sex and marital status because she has alleged facts sufficient to plausibly suggest a prima facie case as to discrimination, and, specifically as to her marital status, that her allegations provide fair notice of a sex-plus claim. (*Id.* at 6-9.)

Third, Plaintiff argues that she has properly pled a claim for disability discrimination under the Americans with Disabilities Act ("ADA") because she has alleged facts plausibly suggesting that she requested a reasonable accommodation, but that those accommodations were changed without her consent, which impacted her ability to perform her job duties. (*Id.* at 9-10.)

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Fourth, Plaintiff argues that she has stated a sufficient claim for hostile work environment. (*Id.* at 10-11.)

Fifth, Plaintiff argues that she has stated a sufficient claim for retaliation because she has pled the existence of a retaliatory hostile work environment through various actions taken by Defendant SUNY Cortland and its employees (*Id.* at 11-12.)

Sixth, Plaintiff acknowledges that her state law claims are barred against Defendant SUNY Cortland because of the doctrine of sovereign immunity. (*Id.* at 12-13.)

Seventh, Plaintiff requests throughout her opposition memorandum of law that she be permitted to amend her Complaint if the Court finds it deficient in any respect. (*See generally* Dkt. No. 21.)

**c. Defendant SUNY Cortland's Reply Memorandum of Law**

Generally, in reply to Plaintiff's opposition, Defendant SUNY Cortland makes six arguments. (Dkt. No. 33.) First, Defendant SUNY Cortland argues that the Court should not construe the Complaint according to the more lenient standards applicable to *pro se* plaintiffs because she was represented by counsel at the time the Complaint was filed. (*Id.* at 6.)

***3** Second, Defendant SUNY Cortland argues that Plaintiff's Title VII discrimination claim should be dismissed because (a) Plaintiff has not opposed its argument that all actions taken prior to July 19, 2022, are time-barred, (b) she has not opposed dismissal of any age-discrimination claim pursuant to Title VII, (c) she has not alleged facts to sufficiently state a sex-plus claim based on her status as a married woman, and (d) she has not sufficiently pled claims based on race or gender given that she has not identified any similarly situated comparators. (*Id.* at 7-9.)

Third, Defendant SUNY Cortland argues that Plaintiff has not pled a claim for disability discrimination under the ADA because she does not assert any claim under that Act, and that, even if the Court were to construe the Complaint as asserting such a claim, it would be barred by the doctrine of sovereign immunity as to Defendant SUNY Cortland. (*Id.* at 9-10.)

Fourth, Defendant SUNY Cortland argues that Plaintiff's hostile-work-environment claim should be dismissed because she has not shown that the alleged conduct rose to the required level of severity. (*Id.* at 11-13.)

Fifth, Defendant SUNY Cortland argues that Plaintiff's Title VII retaliation claim should be dismissed because (a) she has not sufficiently pled a hostile work environment to serve as an adverse action, and (b) she has not pled any other qualifying adverse action. (*Id.* at 13-15.)

Sixth, Defendant SUNY Cortland argues that Plaintiff's state law claims should be dismissed because Plaintiff has conceded that the doctrine of sovereign immunity bars such claims against it. (*Id.* at 15.)

**2. Defendant Prus' Motion to Dismiss**

**a. Defendant Prus' Memorandum of Law**

Generally, in his motion to dismiss Plaintiff's Complaint, Defendant Prus makes five arguments. (Dkt. No. 35, Attach. 1.) First, Defendant Prus argues that Plaintiff's Title VII claims should be dismissed against him because individuals are not subject to liability under Title VII. (*Id.* at 8.)

Second, Defendant Prus argues that Plaintiff's claims pursuant to the NYSHRL should be dismissed for the following reasons: (a) the NYSHRL does not permit direct liability against individual employees, only employers, and Plaintiff does not, and cannot, allege that Defendant Prus was her employer; (b) to the extent she intended to assert aider-abettor liability against Defendant Prus, such a claim must fail because Plaintiff cannot establish the requisite liability of Defendant SUNY Cortland (a prerequisite to succeeding on an aider-abettor claim) given that sovereign immunity requires the dismissal of the NYSHRL direct liability claim against Defendant SUNY Cortland; and (c) even if the Court finds that an aider-abettor claim can proceed regardless of the doctrine of sovereign immunity finding, Plaintiff has not alleged facts to plausibly suggest that Defendant Prus discriminated against her (or engaged in retaliation for reports of discrimination), especially given that Plaintiff has specifically alleged that the discrimination was based on her race or national origin and not any other protected characteristic. (*Id.* at 8-11.)

Third, Defendant Prus argues that Plaintiff's breach-of-contract claim should be dismissed because Plaintiff has not alleged that Defendant Prus was a party to her contract with Defendant SUNY Cortland. (*Id.* at 12-13.)

Fourth, Defendant Prus argues that Plaintiff's claim for IIED should be dismissed because the behavior in which Defendant Prus allegedly engaged is not sufficiently outrageous as a matter of law to state such a claim. (*Id.* at 13-15.)

***4** Fifth, Defendant Prus argues that Plaintiff's negligence claims should be dismissed because allegations of employment discrimination cannot be turned into a tort claim. (*Id.* at 15.)

**b. Plaintiff's Opposition Memorandum of Law**

Generally, in opposition to Defendant Prus' motion, Plaintiff makes five arguments. (Dkt. No. 37.) First, Plaintiff concedes that Defendant Prus cannot be held liable under Title VII. (*Id.* at 6.)

Second, Plaintiff argues that she adequately pled her claim for a violation of the New York State Human Rights Law because (a) her Complaint makes clear that the relevant conduct involved discrimination based on sex, marital status, and disability, (b) she has alleged she suffered various adverse actions, (c) she has alleged that Defendant Prus aided and abetted this conduct by intimidating her, personally discriminating against her, and "turning a blind eye" to discrimination by Plaintiff's colleagues, and (d) her claim cannot be dismissed on the basis of a finding that Defendant SUNY Cortland has immunity given that such a finding does not reach the merits of liability. (*Id.* at 6-11.)

Third, Plaintiff argues that she has adequately pled her claim for breach of contract against Defendant Prus because the Collective Bargaining Agreement, counseling procedures from the Governor's Office, the College Handbook, and state and federal anti-discrimination laws constitute an implied contract, and Defendant Prus' actions in failing to follow procedure and forcing her to adhere to a counseling memorandum that caused her to be treated in an unfair and discriminatory manner constitutes a breach of that implied contract. (*Id.* at 11-12.)

Fourth, Plaintiff argues that she has adequately pled her claim for IIED because she suffered emotional and reputational harms across a span of fifteen years as a result of Defendant Prus' conduct, which included directing the denial of her discrimination complaint for false reasons and ignoring harassment and discrimination against Plaintiff by her supervisor and coworkers. (*Id.* at 13-14.)

Fifth, Plaintiff requests throughout her memorandum, and most specifically related to her NYSHRL claim, to amend the Complaint if the Court finds any of her claims are insufficiently pled. (*See generally* Dkt. No. 37.)

**c. Defendant Prus' Reply Memorandum of Law**

Generally, in reply to Plaintiff's opposition, Defendant Prus makes five arguments. (Dkt. No. 40.) First, Defendant Prus argues that Plaintiff's Title VII claims must be dismissed because she concedes he cannot be held liable under that statute, and there is no cause of action for aiding or abetting under Title VII. (*Id.* at 6.)

Second, Defendant Prus argues that Plaintiff's claim under the NYSHRL should be dismissed because (a) Plaintiff has not argued that Defendant Prus is an employer and thus he cannot be directly liable, (b) Plaintiff's Complaint explicitly asserts this claim only as to race and national origin and has not included any factual allegations to plausibly suggest any such discrimination, and (c) to the extent the Court could construe this claim as being based on sex, marital status, or disability, she still has failed to allege that the actions allegedly taken were actually based on those characteristics (*Id.* at 6-8.)

***5** Third, Defendant Prus argues that Plaintiff's claim for breach of implied contract should be dismissed because, in addition to the fact that much of Plaintiff's argument rests on allegations that are not in the Complaint, she has not alleged facts to plausibly suggest that any of the sources of rights she mentions constitute contracts, much less that Defendant Prus specifically was a party to any of those agreements such that he could be considered bound to a contractual obligation. (*Id.* at 8-10.)

Fourth, Defendant Prus argues that Plaintiff's claim for IIED should be dismissed because (a) she again relies on facts not in the Complaint, and (b) those facts, even if considered, still do not suggest outrageous conduct. (*Id.* at 10-12.)

Fifth, Defendant Prus argues that Plaintiff's negligence claims should be dismissed because Plaintiff fails to oppose the grounds raised in his initial memorandum of law. (*Id.* at 12.)

## II. GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

***6** Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so,

the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. [3]

3 *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a

plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

## III. ANALYSIS

### A. **Whether Plaintiff Has Stated a Claim Pursuant to Title VII**

***7** After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.B.1.a and c, and I.B.2.a and c, of this Decision and Order. To those reasons, the Court adds the following analysis.

As an initial matter, Defendants are correct that Plaintiff cannot assert a claim under Title VII against Defendant Prus because that statute does not create liability for violations against individuals. *See Yerdon v. Poitras*, 120 F.4th 1150, 1156 (2d Cir. 2024) (noting that Title VII of the Civil Rights Act does not permit individual liability when analogizing an identical limitation into Title I of the ADA); *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) ("Individuals are not subject to liability under Title VII."). As a result, to the extent Plaintiff intended to assert such a claim against Defendant Prus, that claim must be dismissed.

Defendant SUNY Cortland, however, can be sued under Title VII. As an initial matter, Plaintiff's argument that the fact that the EEOC provided her with a right-to-sue notice means those claims are timely has no merit. (Dkt. No. 21, at 6.) The copy of the right-to-sue notice that is attached to the Complaint shows that the EEOC did not make any explicit finding regarding timeliness, and also specifically states that "[t]he EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge." (Dkt. No. 1, Attach. 3, at 1.) In any event, even if the EEOC had explicitly found that Plaintiff's claims were timely (which it did not), the Court is not bound by the EEOC's conclusions. *See Shin v. NBC Universal Media, LLC*, 23-CV-10996, 2025 WL 438297 at *7 n.10 (S.D.N.Y. Feb. 7, 2025) (noting that "the Court is not bound by the EEOC's timeliness findings").

A common requirement of Plaintiff's Title VII claims of discrimination and hostile work environment is that she must plausibly allege that the actions taken against her were related to a protected characteristic. As an initial matter, Plaintiff has variously alleged (or her Complaint could be liberally construed as alleging) [4] that she faced discriminatory conduct from Defendants on the basis of sex, religious belief, race, age, marital status, and disability. (Dkt. No. 1, at ¶¶ 3, 8, 25-27, 31, 34, 39, 45.) However, when considering the allegations in both the Complaint and Plaintiff's NYSDHR complaint (which the Court finds to be integral to, and incorporated by reference in, the Complaint), the only categories for which she provides any remotely cognizable question of plausibility are sex, marital status, and disability; she does not specify what her religious beliefs are, much less that Defendants acted discriminatorily related to them; [5] and she mentions she is white, but does not allege, beyond a legal conclusion, that Defendants acted against her because of her race; and she mentions her age, but, again, does not allege that Defendants' actions were in any way related to her age other than to allege vaguely that younger employees were treated better. [6] Out of the three categories for which Plaintiff has provided relevant allegations, Title VII applies only to sex. *See* 42 U.S.C. § 2000e-2 (a)(1) (indicating that Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin). As a result, to the extent Plaintiff has asserted discrimination, retaliation, or hostile work environment claims pursuant to Title VII on a basis that is not covered by that statute, those aspects of Plaintiff's claims must be dismissed. [7] The only relevant protected characteristic at issue here for the Title VII claims is therefore sex, including a sex-plus consideration of her status as a married woman.

4 The Court notes that *all* complaints must be construed liberally. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) ("In making this assessment [of the pleading sufficiency of a complaint], we must ... construe the complaint liberally.") (internal quotation marks omitted).

5 The inclusion of a reference to religious beliefs appears to be an error based on even a liberal construction of all of the allegations in her Complaint and the NYSDHR complaint.

6 Again, having considered the full context of Plaintiff's Complaint and NYSDHR complaint, the specification that her Title VII discrimination and NYSHRL claim in particular are premised on racial discrimination appears to be an erroneous oversight by Plaintiff's previous counsel when drafting the Complaint.

7 The Court declines to read parallel claims under the Age Discrimination in Employment Act ("ADEA") and the ADA into the Complaint related to her assertions of age or disability discrimination. As was already noted previously, although Plaintiff is currently proceeding *pro se* in this action, she was represented by counsel when the Complaint was filed, and the Complaint is indeed signed by her former counsel. (Dkt. No. 1.) Because that Complaint specifically asserts the federal claims under Title VII, those are the only federal claims the Court will consider here.

### 1. Discrimination

***8** "[F]or a discrimination claim to survive a motion to dismiss, 'absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent.' " *Buon*, 65 F.4th at 79 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 [2d Cir. 2015]). An adverse employment action, for the purposes of a discrimination claim, is "a 'materially adverse change' in the terms and conditions of employment." *Buon*, 65 F.4th at 79 (quoting *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 [2d Cir. 2004]). " 'Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.' " *Buon*, 65 F.4th at 79 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 [2d Cir. 2003]).

As Defendants argue in their motions, claims brought pursuant to Title VII are required to meet certain conditions precedent to filing in federal court, and must adhere to certain time limits. Specifically, in New York State, a plaintiff must file a complaint with the Equal Employment Opportunity Commission ("EEOC") or NYSDHR within 300 days of the alleged discriminatory or retaliatory conduct. *King v. Aramark Servs. Inc.*, 96 F.4th 546, 559 (2d Cir. 2024). Discrete adverse events that occurred more than 300 days before that complaint are time-barred and cannot constitute a basis for a plaintiff's claim of discrimination or retaliation. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015) (noting that discrete retaliatory or discriminatory acts occur on the day they happen and are not actionable if they occur outside of the relevant time period [which is 300 days in New York], "even when they are related to acts alleged in timely filed charges"). Here, Plaintiff alleges in her Complaint that she filed the NYSDHR complaint on or about May 15, 2023, a fact confirmed by the copy of that complaint provided by Defendant SUNY Cortland. (Dkt. No. 1, at ¶ 5; Dkt. No. 12, Attach. 3, at 2.) As a result, Plaintiff must have identified an adverse action occurring on or after July 19, 2022, in order to state a claim for discrimination (or, as will be discussed later, retaliation); any alleged discrete adverse actions occurring before that date are time-barred and cannot provide the basis for her claim.

Plaintiff's Complaint itself does not specifically allege any timely conduct. She alleges that she was (a) falsely accused of workplace bullying in October 2021, after which she was "unfairly targeted and blamed by Defendants for systemic performance issues," (b) requested reasonable accommodations for her disability but had her accommodations changed without her consent, and (c) was subjected to a counseling memorandum related to "issues that were not of her making." (Dkt. No. 1, at ¶¶ 16-24.) These allegations do not plausibly suggest any sort of adverse action on or after July 19, 2022, particularly as she has not identified when most of these actions occurred. Her NYSDHR complaint identifies the following allegations from the relevant time period: (a) on August 1, 2022, Psychology Department Chair Craig Foster distributed the Department Annual Report without including any mention of an activism award Plaintiff had received, and the Report is how "administration learns about faculty performance"; (b) on August 5, 2022, Foster distributed the Spring 2023 course schedule wherein Plaintiff was scheduled for a M/W/F courseload (despite the fact her accommodations required a stable T/Th schedule) and assigned for a class she had

previously explained she was not prepared to teach; (c) on October 13, 2022, Foster required her to justify her qualifications before he would sign a routing slip related to a grant for which she had already been approved; and (d) from August through December 2022, Foster "periodically" sent her emails about complaints from students that she was not adequately replying to their requests for assistance, asserted that she had a performance problem, and attempted to meet with her. (Dkt. No. 12, Attach. 3, at 10-11.)

***9** None of these alleged actions taken against her by Foster rise to the level of an adverse employment action that constituted a materially adverse change to the terms and conditions of her employment. Omitting her achievement from the Annual Report, asking her justify her qualifications related to a grant slip, and sending her emails about student complaints do not appear to have affected the terms and conditions of her employment at all. The setting of a course schedule that contradicts her alleged ADA accommodations creates a closer question, but Plaintiff's allegations still fail to show any tangible negative effect to her employment. Specifically, she alleges that, although she was informed of the schedule on August 5, 2022, she did not mention it to anyone (and specifically "waited for [Dean of Arts and Sciences R. Bruce] Mattingly to review the course assignments, hoping the problem would be corrected" because she was "afraid to complain" after previous issues with Defendants), and in fact waited until the course schedule was published in October 2022 to contact her ADA Coordinator to try to have the issue fixed. (Dkt. No. 12, Attach. 3, at 10-11.) However, she also alleges that, after several follow-up emails in October, "the course schedule was fixed," with the only alleged effect being reduced student enrollment due to the late changes. (*Id.*) There is no indication that such changes occurred after the Spring 2023 semester had begun (i.e., no indication that Plaintiff had actually been required to teach the original M/W/F schedule for any period of time before it was fixed). Because Plaintiff has not alleged any change in the terms or conditions of her employment, or indeed any effect on those terms and conditions related to Defendants' actions, Plaintiff has not plausibly alleged that she suffered an adverse employment action related to her discrimination claim.

Because Plaintiff has not alleged facts sufficiently to plausibly suggest a timely adverse action, her Title VII discrimination claim must be dismissed.

### 2. Retaliation

"[F]or a retaliation claim to survive a motion for judgment on the pleadings or motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated – or took an adverse employment action – against [her], (2) 'because' [she] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e-3[a]). In the retaliation context, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.' " *Vega,* 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 [2006]). Unlike discrimination claims, a retaliation claim requires that the retaliation was the but-for cause of the employer's adverse action, such that " 'the adverse action would not have occurred in the absence of the retaliatory motive.' " *Vega,* 801 F.3d at 90 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 [2d Cir. 2013]). Moreover, a plaintiff need not allege that the retaliatory action was taken related to a protected characteristic, but rather that the retaliatory action was taken because he or she had engaged in a protected activity, such as reporting or opposing discrimination. *Vega,* 801 F.3d at 91.

It is not clear precisely what action Plaintiff alleges constitutes protected activity, given that she merely alleges in the Complaint that she was "subjected to retaliation for complaints of discrimination and a hostile work environment."[8] (Dkt. No. 1, at ¶¶ 38, 42.) She does not specify what those complaints involved or when they occurred. (*See generally* Dkt. No. 1.) Her NYSDHR complaint provides greater details, however. Plaintiff does indeed include allegations there regarding complaints she made and actions that she believes were retaliatory; but the majority of those complaints and actions occurred more than 300 days prior to when she filed her complaint with the NYSDHR. The latest such alleged complaint Plaintiff made occurred in April 2022, when she alleges she provided a graph to a non-defendant employee of Defendant SUNY Cortland[9] that demonstrated the inequality in course preparations and course assignments that Plaintiff had dealt with for ten years. (Dkt. No. 12, Attach. 3, at 8.) There is no allegation that this individual provided that graph to Foster in particular (who she alleges took subsequent actions against her). As to those actions, she alleges, as discussed above, that, (a) in August 2022, Foster omitted an activism award


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

she had won from an annual report and assigned her to a course she had stated previously she was not prepared to teach, (b) in August through December 2022, Foster emailed her about students who had reported she was not responding to their requests for assistance and used those complaints to "pad [her] file with negative information," and (c) in December 2022, Foster made her justify her qualifications for a grant for which she had already be approved when she asked him to sign a routine routing slip. (*Id.* at 10-11.) Plaintiff does also allege that her attorney sent a copy of the initial NYSDHR complaint to Defendant SUNY Cortland "shortly after" October 17, 2022, and requested mediation.

8 Notably, Plaintiff's allegations that appear to allege that she was retaliated against for requesting reasonable accommodations for her disability cannot be used to support her retaliation claim under Title VII because no reasonable person could believe that requesting disability accommodations was a complaint about a practice prohibited by Title VII, given that Title VII explicitly does not cover disability discrimination.

9 Plaintiff refers to this individual only as "Sielaff." It is not clear from the context of her allegations who this individual was or what title or role he held at SUNY Cortland, other than that he seems to have acted as an intermediary between Plaintiff and Foster and Mattingly on occasion.

***10** None of these detailed allegations suggest a timely complaint or other action that would constitute a protected activity followed by an adverse action. To the extent that her attorney providing a preliminary copy of the NYSDHR complaint in order to prepare for mediation before filing can constitute protected activity (given the fact that she included the same type of information that was in the version of that complaint that was eventually filed), Plaintiff still has not alleged facts plausibly suggesting that any actions taken thereafter were adverse employment actions that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90. The only action she alleges was taken by Defendants after October 17, 2022, is that Foster attempted to speak with her about why she was supposedly not responding to some of her students' requests for assistance and asserting she had a "performance problem." (Dkt. No. 12, Attach. 3, at 10-11.) Apart from not rising to the level of an adverse action, the December 20, 2022, email that Plaintiff specifically references does not appear to have been causally related to her presentation of her preliminary complaint to Defendant SUNY Cortland, because (a) she has not indicated that Defendant Foster was even aware of her complaint, and (b) she indicates that he had begun sending her emails about this issue as early as August 2022. (*Id.*) Lastly, to the extent Plaintiff alleges that a hostile work environment constitutes an adverse action, the Court finds that Plaintiff has not plausibly alleged the existence of a hostile work environment for the reasons discussed below. Based on the allegations presented in the Complaint and Plaintiff's NYSDHR complaint, Plaintiff has not alleged facts to plausibly state a claim for retaliation pursuant to Title VII.

### 3. Hostile Work Environment

To plead a hostile work environment claim, a plaintiff must allege facts that meet both an objective and subjective standard. Specifically, the misconduct alleged must be both (1) " 'severe or pervasive enough to create an objectively hostile or abusive work environment,' that is, 'an environment that a reasonable person would find hostile or abusive,' " and (2) subjectively perceived by the plaintiff as being abusive. *Moll v. Telesector Research Gr., Inc.*, 94 F.4th 218, 228-29 (2d Cir. 2024) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 [1993]). Whether an environment is objectively hostile is determined by looking at all the circumstances, including (a) the frequency of the discriminatory conduct, (b) its severity, (c) whether it is physically threatening or humiliating or a mere offensive utterance, and (d) whether it unreasonably interferes with the employee's work performance. *Moll*, 94 F.4th at 229 (quoting *Harris,* 510 U.S. at 23). Although hostile work environment claims based on sex need not involve sexually offensive acts and may be supported by facially sex-neutral acts, there still must be evidence suggesting that the actions are based on the sex of the plaintiff. *Moll*, 94 F.4th at 229 (citing *Alfano v. Costello*, 294 F.3d 365, 375 [2d Cir. 2002]; *Raniola v. Bratton*, 243 F.3d 610, 617 & n.6 [2d Cir. 2001])

Unlike discrimination and retaliation claims, which involve discrete acts that individually can be considered actionable, hostile work environment claims have been found to be subject to the continuing violation doctrine "because the 'very nature' of a hostile environment claim 'involves repeated conduct,' and 'incidents that give rise to a hostile work environment can occur

over a series of days or perhaps years and a single act of harassment may not be actionable on its own.' " *King*, 96 F.4th at 559-60 (quoting *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259-60 [2d Cir. 2023]). As a result, in terms of the application of the 300-day limitations period for Title VII claims, as long as an act contributing to the hostile environment claim occurs within the period, "the hostile work environment claim is timely, and a factfinder can hold a defendant liable for 'the entire time period of the hostile environment,' including the period falling outside of the limitations period." *King*, 96 F.4th at 560 (quoting *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 [2002]). As a result, the Court is not limited to considering only conduct that occurred within the 300-day period from when Plaintiff filed the NYSDHR complaint, but any conduct that is part of the pattern of alleged harassment, so long as she has alleged acts that are part of that pattern within the required time period.

Plaintiff alleges that she began working for Defendant SUNY Cortland in September 2002. (Dkt. No. 12, Attach. 3, at 11.) She also alleges a pattern of discriminatory and harassing conduct against her consisting of the following: (a) around January 2007, a witness at her promotion review deliberations complained to the administration that Plaintiff had been subjected to discrimination on the basis of sex and marital status during those proceedings, which resulted in backlash against her husband from other colleagues and an investigation that found no wrongdoing; (b) in Spring 2011, she requested reasonable accommodations under the ADA related to disabilities, which, as will be discussed below, were granted but not always honored; (c) in 2015 through 2016, Plaintiff alleges she felt "stigmatized" and that her colleagues in the Department were not "particularly forthcoming or welcoming," and that she reported to Mattingly that she was concerned "about potential resentment toward me [from her colleagues] because I could not volunteer for time-sensitive committees" due to her disabilities; (d) following another promotion review in 2018,[10] Plaintiff reported due process and other problems that she had encountered during peer-review for that promotion, particularly a violation of her right to confidentiality and influence of her disability status and need for accommodations on the proceedings, yet Defendants failed to conduct any investigation of the report and removed certain accommodations that she still required related to Department meetings; (e) during a meeting in April 2019 with the administration and Department of Psychology, Defendants failed to stop or transcribe defamatory comments and personnel discussions that Plaintiff believed were about her; (f) in July and August of 2021, she had to intervene to receive her accommodations regarding class schedules (she required a stable T/Th schedule due to her disability) and was made to list courses she was no longer prepared to teach; (g) in October 2021, Defendant Prus counseled her and placed a counseling memorandum in her file related to emails she had sent to Foster and Mattingly related to the course assignment issues (which Plaintiff acknowledges were "uncharacteristically direct and I regretted some of my word choices"), and she had to attend meetings related to that counselling; (h) in October and November 2021, Defendants attempted to eliminate an independent study course that Plaintiff (and others, including at least one male professor) used for research students; (i) Plaintiff felt offended by a meme and some text Foster included in a November 2021 email that she believed was referring to her and her husband;[11] (j) she and her husband were both not provided meeting minutes (which were part of their ADA accommodations) and were excluded from certain emails within the Department; (k) in January 2022, Defendants notified of a new policy by which all faculty (except one who was also teaching at another college) were being placed on a rotating teaching schedule, which Plaintiff alleges was against her reasonable accommodations, and she was indeed placed on a M/W/F schedule rather than the T/Th schedule she required, although that was later amended to permit a T/Th schedule for the Fall 2022 semester; (l) Foster and Mattingly told Evans[12] that they wanted Plaintiff to resign from department-related service positions; (m) she would be required by the terms of her Alternative Work Agreement proposed by Defendants to have a list of nine course preparations despite the fact that two or three is "normative for faculty in the department"; (n) in April 2022, she was still not consistently receiving meeting minutes as required and did not receive the same information as other faculty; (o) in August, Foster omitted an award she had won from the Department Annual Report, and she was again placed on a M/W/F course schedule for Spring 2023 and was assigned to a course she had indicated she was not prepared to teach; (p) Foster periodically emailed her from August through December 2022 about reports from students that she was not replying to their requests for assistance and saying she had a performance problem; and (q) Foster required her to justify her qualifications before he would sign a routing slip related to disbursement of a grant she had already obtained. (*See generally* Dkt. No. 12, Attach. 3.)

10 Plaintiff alleges that she was ultimately promoted to Professor of Psychology based on this review effective September 1, 2018. (Dkt. No. 12, Attach. 3, at 14.)

11 The meme is not described but the text was "Unknown fact about me. I hate pigeons. I don't understand why anybody feeds an organism which contributes nothing to a metropolitan area other than poop and aggravation." (Dkt. No. 12, Attach. 3, at 5.)

12 It is unclear what Evans' title or role was at SUNY Cortland.

***11** The Court finds that these allegations do not plausibly suggest an objectively hostile work environment. Notably, although Plaintiff alleges that these actions "undermined" her job performance, she does not indicate in what ways they interfered with her ability to perform her work. The alleged actions were not physically threatening, and, although Plaintiff does allege at least one instance on which she felt humiliated by Defendants' revealing her disabilities and/or accommodations to her colleagues, that appears to have been a fairly isolated occurrence, with the only other allegations related to her feeling "stigmatized" and resented by her colleagues in 2015 and 2016, although she does not allege that any of those colleagues took actions against her beyond seeming not "particularly forthcoming or welcoming." (Dkt. No. 12, Attach. 3, at 13-14.) Further, incidents from 2019 and earlier were sporadic, and, although Plaintiff alleges a number of incidents occurring particularly in 2021 and 2022, those are not of the severity that has generally been found to sustain a claim for a hostile work environment. Having to rectify an erroneous course schedule on two occasions, needing to be prepared to teach more courses than other professors, being excluded from certain emails, and receiving criticism or scrutiny from persons in supervisory positions simply do not amount to a hostile work environment, even if Plaintiff subjectively perceived them as being hostile and abusive. *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (finding that allegations of wrongful exclusion from meetings, excessive criticism of her work, refusal to answer work-related questions, imposition of arbitrary duties, throwing books, and sending rude emails were insufficient to show a hostile work environment). For these reasons, Plaintiff has not alleged facts to plausibly suggest that her work environment was objectively hostile or abusive.

Moreover, Plaintiff has not alleged facts to plausibly suggest that the various actions Defendants allegedly took against her were on the basis of either her sex or her status as a married woman. *See Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (" 'It is axiomatic that mistreatment at work, whether through subjection to a hostile work environment or through [other means], is actionable under Title VII only when it occurs because of an employee's ... protected characteristic.' ") (quoting *Brown v. Henderson*, 257 F.3d 246, 252 [2d Cir. 2001]). Plaintiff does not allege any sexist or gender-related comments, nor does she allege facts plausibly suggesting that male colleagues were treated more favorably. Plaintiff includes facts about an email from Foster in August 2022 in which he stated he was interested in gender diversity related to a new hire that had just been approved. (Dkt. No. 12, Attach. 3, at 10.) Plaintiff indicates that she believes that "gender diversity" was Foster's way of stating there were too many women in the Department, yet Plaintiff has not provided any allegations regarding the sex of the other faculty members in the Department. (*Id.*) She notably alleges that the Department rehired a woman professor in December 2021 who had left the college in January 2020 to accept a position at another college. Moreover, in the sentence that follows her discussion of Mr. Foster's concerns about "gender diversity," Plaintiff undermines her own assertion that the discrimination she faced was based on her gender by stating that "Foster articulated that this new hire would be able to move into other classes, the 'flexibility like the rest of you enjoy' (which meant, *everyone except me*)." (*Id.* [emphasis added].) If the discrimination was based on sex, it is not clear why Plaintiff would be the only faculty member who was not provided with that flexibility given that she has alleged that some of the other faculty are also women.

As to sex-plus discrimination, Plaintiff alleges that, in raw notes from a Chair's Counsel meeting, Foster wrote that they would not be hiring any more married couples for faculty. (*Id.*) However, as discussed above, marital status alone is not a protected category under Title VII; rather, Plaintiff must allege that she was discriminated against as a *married woman* specifically. A decision not to hire married couples does not discriminate against only married women, but also against married men. Moreover, Plaintiff's allegations indicate that her husband was also treated in a similar manner as her related to failing to provide meeting minutes, engaging in prolonged negotiation of Alternate Work Agreements, issuing a counseling memorandum, and excluding from emails and meetings. (*See generally* Dkt. No. 12, Attach. 3.) The fact that Plaintiff's husband, a married man, suffered some of the same allegedly harassing conduct cuts against an inference that such conduct was motivated by Plaintiff's status as a married woman. Lastly, a policy to not hire married couples as faculty (as in, to hire both spouses together, as Plaintiff and her husband were in 2002) does not plausibly suggest that Defendant SUNY Cortland would refuse to hire an individual

simply because they are married, and, again, does not lead to an inference that such policy would discriminate against married women specifically.

***12** For all of the above reasons, Plaintiff has not alleged facts to plausibly suggest any of her claims pursuant to Title VII. Those claims are therefore dismissed. [13]

13 The Court also denies any request to amend the Complaint related to the Title VII claims because even a liberal construction of Plaintiff's Complaint and opposing memoranda of law do not suggest the existence of any additional facts (consistent with her Complaint) which would lead the Court to believe she can remedy the deficiencies noted in this Decision and Order related to those claims. In short, for the reasons stated more fully below in Part III.B. of this Decision and Order, the Court finds that the pleading defects in Plaintiff's claims are so substantive that an amendment is unlikely to be productive. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend."). The Court notes, again, that, in determining whether she had plausibly stated those claims, it has considered the detailed recitation of events contained in the NYSDHR complaint, and Plaintiff has not suggested that she could assert additional facts that would permit her to state any plausible claim under Title VII.

### B. Whether Plaintiff Should Be Permitted to Amend Her Complaint to Assert a Claim for Disability Discrimination, Retaliation, and/or Hostile Work Environment Under the ADA

After careful consideration, the Court answers the above question in the negative for the following reasons.

Plaintiff has generally requested that she be permitted to amend her Complaint if the Court finds that the pleading of her claims is deficient. Although, as the Court discussed above, Plaintiff did not plead any claim under the ADA in the Complaint, she does include allegations that she was discriminated and/or retaliated against related to her disability and requests for certain accommodations. Because amendment to assert an additional federal claim would affect whether the Court has federal-question jurisdiction over Plaintiff's Complaint, the Court will consider whether Plaintiff would be able to amend her Complaint to assert a claim under the ADA.

As to any ADA claim Plaintiff might wish to assert against Defendant SUNY Cortland, such a claim would be barred by the Eleventh Amendment. *See Rella v. New York State Off. of Mental Health*, 19-CV-0723, 2022 WL 179978, at *4 (N.D.N.Y. Jan. 20, 2022) (Mordue, J.) ("[T]he Supreme Court has held that Congress did not abrogate the States' sovereign immunity by enacting Title I of the ADA.") (citing *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 [2001]); *accord Blair v. SUNY Univ. at Buffalo*, 17-CV-1217, 2020 WL 695870, at *4 (W.D.N.Y. Feb. 11, 2020) (recognizing that "SUNY is an integral part of the government of the State [of New York] and when it is sued the State is the real party"). Plaintiff has not alleged any facts which would plausibly suggest that Defendant SUNY Cortland somehow waived its immunity related to this claim. As a result, any ADA claim for discrimination, retaliation, or hostile work environment that Plaintiff would assert against Defendant SUNY Cortland would be subject to dismissal based on sovereign immunity.

***13** As to any ADA claim Plaintiff might wish to assert against Defendant Prus, the Second Circuit has held that individual employees sued in their personal capacity cannot be held liable under either Title I or Title V of the ADA. *Yerdon v. Poitras*, 120 F.4th 1150, 1155-1157. Plaintiff has here sued Defendant Prus in his personal capacity, and therefore she could not assert a valid claim for discrimination, retaliation, or hostile work environment against him under the ADA. To the extent she might be permitted to amend the Complaint to assert ADA claims against him in an official capacity, such claims would nonetheless fail for similar reasons as her Title VII claims: she has not pled any qualifying (and timely) adverse action related to a discrimination or retaliation claim or an objectively hostile pattern of conduct related to a hostile work environment claim. [14]

14 Of note, related to her NYSDHR claim, Plaintiff discusses a number of new allegations related to conduct by Defendant Prus that she would intend to plead in amending the Complaint. (Dkt. No. 37, at 8-11.) These allegations notably do not include anything occurring after July 19, 2022, and thus would have no bearing on the Court's analysis related to the existence of an adverse action for a discrimination or retaliation claim, given that ADA claims are also subject to the 300-day time limit. *See Harris v. City of New York*, 186 F.3d 243, 247-48 (2d Cir. 1999) (finding that ADA claim based on being denied a promotion was time-barred because the plaintiff filed his complaint with the EEOC more than 300 days after he should have known of the denial); *Mitchell v. Planned Parenthood of Greater New York, Inc.*, ––– F. Supp. 3d ––––, 2024 WL 3849192, at *6-7 (S.D.N.Y. Aug. 16, 2024) (finding that discrimination and retaliation claims, including under the ADA, were time-barred as to any discrete acts that took place more than 300 days before when the plaintiff filed a complaint with the EEOC). The Court further finds that the new allegations would not change its finding related to the existence of a hostile work environment, because some of them, like the discussion of Defendant Prus' actions at a 2019 meeting, appear to merely add more detail to circumstances already alleged and considered (i.e., that Defendant Prus humiliated her at a meeting and allowed her ADA accommodations and disability status to become known to others). She newly alleges that Defendant Prus accessed her email account in 2021 related to the eventual counseling memorandum. (Dkt. No. 37, at 10.) However, accessing her email (which the Court assumes was Plaintiff's work email address for SUNY Cortland) related to an investigation that, from other allegations, appeared to be at least partly prompted by an email Plaintiff sent reporting unfair work assignments that, as noted previously, according to Plaintiff, contained some language that she later regretted using. Under the circumstance, this new allegation would not alter the Court's conclusion regarding the existence of a hostile work environment.

For these reasons, the Court denies Plaintiff's request to amend the Complaint to the extent she would be seeking to assert any claim pursuant to the ADA.

### C. Whether the State Law Claims Against Defendant SUNY Cortland Should Be Dismissed

After careful consideration, the Court answers the above question in the affirmative for the reasons stated in Defendants' memorandum of law. *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order. To those reasons, the Court adds the following analysis.

As an initial matter, the Court finds, in its discretion, that it should exercise supplemental jurisdiction over Plaintiff's state-law claims against Defendant SUNY Cortland in the interest of judicial economy, convenience, fairness, and comity. Defendant SUNY Cortland has argued that the NYSHRL, breach-of-contract, IIED, and negligence claims must be dismissed on the basis of sovereign immunity because SUNY Cortland is an agency of the State of New York. (Dkt. No 12, Attach. 1, at 23-27.) Plaintiff has conceded that sovereign immunity prevents her from pursuing these claims against Defendant SUNY Cortland. (Dkt. No. 21, at 12.) The Court agrees that these claims are barred in this federal action. *See Al-Shimary v. State Univ. of New York at Binghamton*, 22-CV-1282, 2023 WL 7128861, at *6 (N.D.N.Y. Oct. 30, 2023) (McAvoy, J.) (noting that SUNY enjoys sovereign immunity as a division of New York State, and that New York has not waived its immunity related to NYSHRL claims in federal court); *Fizulich v. Killings*, 22-CV-1190, 2023 WL 4643011, at *4 (N.D.N.Y. July 20, 2023) (Hurd, J.) (finding claim for breach of contract against SUNY Albany was barred by sovereign immunity because there was no indication New York State had consented to suit or waived its immunity as to such claim); *Heba v. New York State Div. of Parole*, 537 F. Supp. 2d 457, 471 (E.D.N.Y. 2007) (finding sovereign immunity barred claims under the NYSHRL, IIED, and negligence); *Marsh-Godreau v. SUNY College at Potsdam*, 15-CV-0437, 2016 WL 1049004, at *3 (N.D.N.Y. Mar. 11, 2016) (Kahn, J.) (finding that "the Eleventh Amendment bars federal suits against state officials on the basis of state law" when dismissing an IIED claim). There is no indication that New York State has waived its immunity related to any such claims.

***14** For the above reasons, Plaintiff's state law claims against Defendant SUNY Cortland are dismissed on the basis of sovereign immunity. Given the significant uncertainty that exists regarding whether such dismissals should be with or without prejudice, the Court dismisses these claims only without prejudice to refiling in state court. *Mulhern Gas Co., Inc. v. Rodriguez*, 23-CV-1267, 2024 WL 3992588, at *7-8 (N.D.N.Y. Aug. 29, 2024) (Suddaby, J.).

**D. Whether the Court Should Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims Against Defendant Prus**

After careful consideration, the Court answers the above question in the negative.

Under the circumstances, the Court is inclined to dismiss Plaintiff's remaining state law claims without prejudice to refiling in the appropriate state court within the applicable limitations period. *See Traylor v. Town of Waterford*, No. 24-691, 2024 WL 4615599, at *2 (2d Cir. Oct. 30, 2024) (finding that district court's dismissing state claims due to declining to exercise supplemental jurisdiction could not be construed as dismissing those claims with prejudice because a dismissal for lack of jurisdiction must be without prejudice) (citing Fed. R. Civ. P. 41[b] and *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 126 [2d Cir. 2022]).

Section 1367 of Title 28 of the United States Code permits a district court to decline to exercise supplemental jurisdiction for state law claims where, in relevant part, the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has recently stated that, in such a context "although supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. ——, 2025 WL 96212, at *5 (2025) (citing *Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 [1966]). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, Plaintiff's Complaint was filed on April 17, 2024, less than one year ago, and is currently still in the early stages of development. The remaining claims against Defendant Prus (and the claims against Defendant SUNY Cortland that have been dismissed based on sovereign immunity rather than the merits and therefore could be reasserted in state court) relate solely to New York statutory, contract, and tort law. Having considered the above factors, especially in a case such as this which is still in the pre-discovery motion-to-dismiss stage, the Court finds no compelling reason to exercise supplemental jurisdiction over the remaining state-law claims.

**ACCORDINGLY**, it is

**ORDERED** that Defendant SUNY Cortland's motion to dismiss Plaintiff's Complaint for failure to state a claim (Dkt. No. 12) is **GRANTED**; and it is further

***15 ORDERED** that Defendant Prus' motion to dismiss Plaintiff's Complaint for failure to state a claim (Dkt. No. 35) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims pursuant to Title VII are **DISMISSED** **with prejudice**; and it is further

**ORDERED** that Plaintiff's state law claims are **DISMISSED** **without prejudice** to refiling in state court within the applicable limitations periods; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

**All Citations**

Not Reported in Fed. Supp., 2025 WL 904649

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 3835868
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert MATTHEWS, Plaintiff,
v.
CSX TRANSPORTATION, Defendant.

5:17-CV-448 (GTS/ATB)
|
Signed 07/06/2017

**Attorneys and Law Firms**

ROBERT MATTHEWS, pro se.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

***1** In April of 2017, the Clerk has sent to the court a civil rights complaint filed by pro se plaintiff, Robert Matthews. (Dkt. No. 1). Plaintiff had also filed an application to proceed in forma pauperis ("IFP") (Dkt. No. 2). On April 28, 2017, I reviewed the complaint and the IFP application and found that the IFP application was incomplete, and that, in any event, the complaint failed to state a claim.

As a result, rather than recommending dismissal, I ordered plaintiff to file a completed IFP application, together with a proposed amended complaint so that this court could undertake a proper review of the plaintiff's claims. (Dkt. No. 4). I gave the plaintiff until the end of May 2017 to provide the appropriate documentation or to ask for an extension of time to do so. (Dkt. No. 4 at 5). I also informed the pro se plaintiff that if he needed assistance completing the forms required, he could contact the NYND/FCBA Pro Se Assistance Program. As of today's date, plaintiff has neither completed his application to proceed IFP, nor has he complied with this court's directive. Thus, for the following reasons, this court will recommend dismissal of the plaintiff's complaint.

**I. IFP Application**

In order to proceed IFP in federal court, the court must be satisfied by plaintiff's affidavit that he is unable to pay the "cost of these proceedings." (Dkt. No. 2 at ¶ 2); 28 U.S.C. § 1915. In this case, plaintiff used the "Short Form" application to proceed IFP. (*Id.*) Plaintiff alleged that he was currently employed, and he stated the amount of his gross pay, his net pay, and the specific pay period within which he receives his pay. (*Id.*)

The form also asks whether in the past twelve months, plaintiff received income from any one or more of six sources. (Dkt. No. 2 at ¶ 3). Plaintiff checked "yes," indicating that he received income from "Any other sources." (Dkt. No. 2 at ¶ 3(f)). However, the form indicates that if plaintiff did receive income from other sources, he must "describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future." (*Id.*) Although plaintiff indicated that he received income from "other sources," he has neglected to complete the second part of the form. This court had no idea how much money, from what other sources, and what plaintiff might have expected to receive in the future.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

In my April 28, 2017 Order, I determined that without the above information, I could not make a determination of whether plaintiff met the financial criteria for proceeding IFP. (Dkt. No. 4 at 1-2). I directed that plaintiff properly complete his IFP application. However, as stated above, plaintiff has failed to do so, or to request an extension of time to do so. Thus, the court still is unable to determine whether plaintiff meets the financial requirement to proceed IFP. The complaint may be dismissed on this basis alone. However, I will continue my analysis.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

***2** In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

## II. Americans With Disabilities Act

Plaintiff's complaint was filed on a form for complaints brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. A prerequisite to filing a suit under the ADA is filing a complaint and obtaining a Right-to-Sue Letter from the Equal Employment Opportunity Commission ("EEOC"). *Chiari v. New York Racing Ass'n*, 972 F. Supp. 2d 346, 362 (E.D.N.Y. 2013) (citing inter alia 42 U.S.C. § 12117(a); 42 U.S.C. §§ 2000e-5(e)(1); *Grey v. Promenade Rehab. and Care Ctr.*, 145 Fed.Appx. 705 (2d Cir. 2005) (upholding sua sponte dismissal of complaint in which no EEOC Right-to-Sue Letter was filed)).

On the form, plaintiff checked boxes indicating that he was subject to "Retaliation" and "Other acts as specified below." (Complaint ("Compl.") ¶ 5(E), (F)) (Dkt. No. 1). Plaintiff stated that the "other acts" were as follows: "Treated unfairly, Foreman used by [sic] disability against me. I have paperwork to add if needed." (Compl. ¶ 5(G)). Plaintiff attached a December 16, 2016 determination of the New York State Division of Human Rights ("DHR") to his federal complaint, but did not attach a Right-to-Sue Letter from the EEOC. At the end of his DHR determination, it states that "Your charge was also filed under the [ADA]. Enforcement of the aforementioned law(s) is the responsibility of the ... EEOC. You have the right to request review by EEOC of this action." (Compl. at CM/ECF p.6). The letter then explains how plaintiff could secure review by the EEOC, and that if plaintiff does not request review, the EEOC "will generally adopt our action in your case." (*Id.*)

As I stated in my April 28, 2017 Order, this court has no way of knowing whether plaintiff obtained a Right-to-Sue Letter from the EEOC. (Dkt. No. 4 at 3). Plaintiff stated in the body of the complaint that he had "paperwork" to add, but there was no indication whether this "paperwork" related only to the alleged discrimination or whether it included proof of any additional procedural steps taken by the plaintiff.

In my order, I also noted that plaintiff's DHR complaint did not include a specific "Retaliation" claim. Plaintiff may be confused as to the definition of retaliation under the ADA. [1] Plaintiff may be attempting to assert ADA discrimination, but has improperly used the word "retaliation." "Significantly, a claim of retaliation for protected conduct is a separate claim from a discrimination claim and does not depend on the success of the employee's disability claim." *Jansson v. Stamford Health, Inc.*, No. 3:16-CV-260, 2017 WL 1289824, at *12 (D. Conn. Apr. 5, 2017) (citing *Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d 378 (E.D.N.Y. 2016) (citation and internal quotation marks omitted)). Finally, I noted that, although plaintiff's DHR letter states that he was terminated from his position, plaintiff has failed to check the box indicating that the termination was discriminatory.

1 Plaintiff alleges that he has diabetes, and that the "Foreman" "used" plaintiff's "disability" against him, and that there was "retaliation." However, there is no indication in the complaint of how plaintiff was treated "unfairly," how the Foreman "used" the disability against plaintiff, or what protected activity by plaintiff caused the defendant's "retaliation." *See Hong Yin v. North Shore LIJ Health Systs.*, 20 F. Supp. 3d 359, 374 (E.D.N.Y. 2014) (in order to state a retaliation claim under the ADA, plaintiff must have engaged in a protected activity, defendant must have known about that activity, and an adverse decision or course of action was taken against the plaintiff which was causally related to the protected activity). This court has gleaned what facts may be involved by reading the attached DHR decision. (Compl. at 5-6). A review of this decision indicates that plaintiff was counseled by a new supervisor regarding his "poor attendance" and lateness. Although plaintiff told the DHR that he needed time to attend to his insulin pump, he did not mention this to the defendant.

***3** Plaintiff did not attempt to clarify his complaint, nor did he submit his Right-to-Sue letter as this court directed and as required to proceed with his action. Plaintiff has not asked for assistance or contacted the court or the Pro Se Assistance Program in order to properly complete his IFP application and his ADA complaint. Thus, because plaintiff has failed to respond in any way, and because his complaint does not state a claim as it is written, this court will recommend dismissing plaintiff's complaint.

### III. <u>Opportunity to Amend</u>

#### A. Legal Standards

Generally, before the court dismisses a pro se complaint or any part of the complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

#### B. Application

Although this court attempted to assist plaintiff by giving him an opportunity to cure the deficiencies in his IFP application, plaintiff failed to comply with this court's direction. Plaintiff may have abandoned his claims. However, because this is the first time that the court has actually recommended dismissal, I will recommend that plaintiff be given one more chance to give the court the information that it needs for plaintiff to proceed and to amend his complaint to clarify his claim for disability discrimination.

**WHEREFORE**, based on the above, it is

**RECOMMENDED**, that plaintiff's motion for IFP status (Dkt. No. 2) be **DENIED and the COMPLAINT DISMISSED**, unless plaintiff submits the appropriate IFP information discussed above within **THIRTY (30) DAYS FROM THE DATE OF THE DISTRICT COURT'S ORDER APPROVING THIS RECOMMENDATION**. [2] The information shall include the income that he has received from "other sources" and any other relevant information required on the IFP form-application, and it is

2 If plaintiff requires more time to comply with this court's order, he may request an extension of time from the court.

**RECOMMENDED**, the complaint be **DISMISSED**, unless plaintiff also submits an amended complaint for the court's review within **THIRTY (30) DAYS OF THE DATE OF THE DISTRICT COURT'S ORDER APPROVING THIS RECOMMENDATION**, or requests an extension of time to do so.[3] The amended complaint shall include a copy of any Right-to-Sue letter from the EEOC and any other information regarding plaintiff's alleged claims as discussed above, and it is

3 Plaintiff is reminded that if he wishes assistance in completing the proper forms, he may contact the NYND/FCBA Pro Se Assistance Program at (315) 422-2711 or toll free 1-877-422-1011.

**RECOMMENDED**, that upon the expiration of **THIRTY (30) DAYS OF THE DISTRICT COURT'S ADOPTION OF THIS RECOMMENDATION**, if plaintiff has complied with the court's order, the completed IFP and the proposed amended complaint be sent back to me for review, and it is

**RECOMMENDED**, that upon the expiration of **THIRTY (30) DAYS OF THE DISTRICT COURT'S ADOPTION OF THIS RECOMMENDATION**, if plaintiff has failed to comply with the above, that the court **DISMISS THE COMPLAINT IN ITS ENTIRETY WITHOUT FURTHER RECOMMENDATION OR ORDER OF THIS COURT.**

**ORDERED**, that the Clerk serve a copy of this order on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3835868

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 3736786
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert MATTHEWS, Plaintiff,
v.
CSX TRANSPORTATION, Defendant.

5:17-CV-0448 (GTS/ATB)
|
Signed 08/29/2017

**Attorneys and Law Firms**

ROBERT MATTHEWS, 4770 Boyle Drive, Syracuse, New York 13215, Pro Se.

**DECISION and ORDER**

HON. GLENN T. SUDDABY, Chief United States District Judge

***1** Currently before the Court, in this *pro se* civil rights action filed by Robert Matthews ("Plaintiff") against CSX Transportation ("Defendant"), is United States Magistrate Judge Andrew T. Baxter's Report-Recommendation recommending that this action be *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(a)(1) and 1915(e)(2)(B) unless, within thirty (30) days of the date of a Decision and Order adopting the Report-Recommendation, Plaintiff files (1) a completed *in forma pauperis* ("IFP") application, and (2) an Amended Complaint that corrects the pleading defects identified in the Report-Recommendation. (Dkt. No. 5.) Plaintiff has not filed an objection to the Report-Recommendation, and the deadline in which to do so has expired. (*See generally* Docket Sheet.).

After carefully reviewing the relevant papers herein, including Magistrate Judge Baxter's thorough Report-Recommendation, the Court can find no clear-error in the Report-Recommendation.[1] Magistrate Judge Baxter employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein, and this action shall be dismissed unless, within thirty (30) days of the date of this Decision and Order, Plaintiff files (1) a completed IFP application, and (2) an Amended Complaint that corrects the pleading defects identified in the Report-Recommendation.

1 When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Baxter's Report-Recommendation (Dkt. No. 5) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that this action shall be *sua sponte* **DISMISSED** pursuant to 28 U.S.C. §§ 1915(a)(1) and 1915(e)(2)(B) unless, within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff files (1) a completed IFP application, and (2) an Amended Complaint that corrects the pleading defects identified in the Report-Recommendation (including, but not limited to, the inclusion of a copy of any right-to-sue letter from the Equal Employment Opportunity Commission); and it is further

**ORDERED** that, if Plaintiff files a completed IFP application and an Amended Complaint within the referenced thirty-day period, then the completed IFP application and the Amended Complaint shall be referred to Magistrate Judge Baxter for his review; if, however, Plaintiff fails to file either a completed IFP form or an Amended Complaint within the referenced thirty-day period, then this action shall be dismissed without further Order of the Court.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3736786

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,
v.
Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

***1** The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted. [1]

1 Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

## I. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis. See id.*

2 To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also*

*Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

***2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

## B. Analysis of the Complaint

A court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

***3** The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

3 If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.

FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17517312

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,
v.
Jonathan ROBBINS, Jean-Max Bellerive, Josue Pierre-Louis, Garry Conille, Jean-Claude Theogene, Barthelemy Anteno, Kwasi Amoako-Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

***1** On November 22, 2022, *pro se* Plaintiff Manetirony Clervrain ("Plaintiff") filed a complaint against Defendants consisting of 70 pages of forms and documents, *see* Dkt. No. 1, "recit[ing] a wide variety of federal statutes and case law," Dkt. No. 7 at 5, and around two hundred pages of attachments. *See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No. 2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart granted Plaintiff's motion to proceed IFP. *See* Dkt. No. 6. Additionally, Magistrate Judge Stewart issued a Report-Recommendation and Order recommending that the complaint be dismissed with leave to amend. *See* Dkt. No. 7. Plaintiff has not filed an objection to the Report-Recommendation and Order.

When a party declines to file objections to a magistrate judge's report-recommendation or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the district court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-Recommendation and Order, Plaintiff's complaint and the applicable law, the Court finds that Magistrate Judge Stewart correctly determined that the complaint should be dismissed. The complaint is largely incomprehensible and suffers from several deficiencies. Rule 8(a) of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint is neither short nor plain. *See* Dkt. No. 1. As currently drafted, and even with the leniency given

to a *pro se* litigant's pleadings, Plaintiff failed to meet pleading standards such that the Court is unable to meaningfully analyze whether Plaintiff can allege any colorable claim against Defendants. *See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL 6690170, *5 (N.D.N.Y. Nov. 2, 2015) ("[H]aving found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

***2** Finally, the Court agrees with Magistrate Judge Stewart that Plaintiff should be granted an opportunity to amend out of deference to Plaintiff's *pro se* status. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim' ") (quotation omitted). Should Plaintiff choose to amend the complaint, the Court urges Plaintiff to review Magistrate Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3170384

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2700243
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mary-Rose F. CALEZNO, Plaintiff,
v.
WASTE MANAGEMENT, INC., et al., Defendants.

No. 1:24-CV-1499 (AMN/PJE)
|
Signed August 26, 2025

**Attorneys and Law Firms**

Mary-Rose F. Calenzo, 553 Coyote Circle, Midway Park, North Carolina 28544, Plaintiff pro se.

## REPORT-RECOMMENDATION AND ORDER [1]

1 This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(d).

PAUL J. EVANGELISTA, UNITED STATES MAGISTRATE JUDGE

## I. In Forma Pauperis

***1** Plaintiff pro se Mary-Rose F. Calenzo (“plaintiff”) commenced this action on December 10, 2024, by filing a complaint. *See* Dkt. No. 1. In lieu of paying this Court's filing fee, plaintiff submitted an application for leave to proceed in forma pauperis (“IFP”). *See* Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that she financially qualifies to proceed IFP. [2] This Court must now assess the merits of plaintiff's complaint pursuant to 28 U.S.C. §§ 1915; 1915A. [3]

2 Plaintiff is advised that although she has been granted IFP status, she is still required to pay any fees and costs they may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

3 These requirements apply equally to non-prisoner pro se litigants. *See* N.D.N.Y. L.R. 72.3(d) (“Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.”).

## II. Initial Review

### A. Legal Standards

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, “the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.” 28 U.S.C. § 1915(e)(2)(B). “Thus, it is a

court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law....

*Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted*); see also Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted). Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

***2** "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure."[4] *Kastner v. Tri State Eye*, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)).[5] Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction ... and ... a demand for the relief sought ...." FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

4 Hereinafter, "Fed. R. Civ. P."

5 All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores*, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (citations omitted).

## III. **Discussion**

### A. **Plaintiff's Complaint** [6]

6 Plaintiff included three attachments with her complaint. *See* Dkt. Nos. 1-1, 1-2, 1-3. These attachments have also been reviewed in connection with the initial review of plaintiff's complaint. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted).

Plaintiff states that she was employed by Waste Management, Inc. ("Waste Management") as a truck driver from March 5, 2018, to January 18, 2022. *See* Dkt. No. 1 at 9; Dkt. No 1-2 at 5. Plaintiff's complaint names Waste Management as a defendant, along with the following individuals, who were or are employed by Waste Management: (1) James Dennis ("Dennis"), route manager for commercial; (2) Michael Glass ("Glass"), route manager for industrial; (3) Raymond Bender ("Bender"), safety manager; and (4) Joseph Mazzelli ("Mazzelli"), district manager. *See id*. at 7, 9.

***3** Plaintiff's complaint is based on the following events. [7] On March 5, 2018, plaintiff signed an employment contract with Waste Management to be a truck driver. *See* Dkt. No. 1 at 9. The employment contract detailed Waste Management's terms of employment and specified that a violation of company rules could be grounds for termination. *See id*. Plaintiff alleges that in "11/2021," "Dennis harassed [her] to follow his directions" to increase plaintiff's work efficiency, despite his "directions" being unsafe and in violation of the Waste Management's rules of employment. *Id*. Plaintiff states that Dennis refused to listen to her safety concerns about the truck she was assigned and insisted she drive the truck despite that it could reach a maximum speed of forty-five miles-per-hour and "she was required to drive on a toll road with a speed limit of 65." *Id*. Plaintiff brought this issue to Mazzelli's attention and explained that she did not feel safe following Dennis' instructions. *See id*. Mazzelli then instructed Bender "to determine if [Dennis'] instructions were safe." *Id*. Plaintiff asserts that Dennis, Mazzelli, and Bender "were all aware of Waste Management[']s policies regarding the directions [ ] Dennis was giving. And they were all aware that his instructions were in fact prohibited ... and unless a safety policy was changed to allow such activities, they could not force [her] to follow [ ] Dennis' instructions." *Id*. Plaintiff claims that Dennis was "intentionally setting [her] up to fail." *Id*.

7 Plaintiff's complaint appears timely. The EEOC issued a right-to-sue letter on September 13, 2024, and plaintiff filed her complaint within ninety days from that date. *See* Dkt. No. 1-1 at 1.

On January 10, 2022, plaintiff arrived to work at 3:30 A.M. *See* Dkt. No. 1 at 10. "The truck assigned to her wouldn't start." *Id*. Plaintiff claims that this prevented her from performing a "proper pre trip" safety inspection of her truck before beginning her route, as the New York State Department of Transportation ("DOT") and Waste Management rules require. *Id*. Plaintiff asked Dennis if she could use a spare truck. *See id*. Dennis denied this request and "gave her an ultimatum of either she take the inoperable truck as planned or go home." *Id*. Dennis explained that the use of her assigned truck was necessary "to assist a Commercial Waste route driver who was repeatedly coming in overweight" and the spare truck "couldn't by law carry" the required weight needed to complete the job. *Id*. Plaintiff claims that Dennis failed to tell her that the spare truck was unavailable because it was assigned to a different driver. *See id*. Plaintiff asserts that after she was terminated, her assigned truck was then turned into a spare truck because Dennis "deemed [it] inadequate to collect waste." *Id*.

On or about January 12, 2022, an incident occurred at a job site in which "a wall had been knocked over by a dumpster when the driver was no longer attached to the can." Dkt. No. 1 at 10. Plaintiff claims that she attempted to discuss the incident with Dennis on January 13, 2022, but Dennis refused because it was 3:30 A.M. *See id*. Plaintiff alleges "that regardless of what took place[,]" Dennis "already had the write up" and was charging her "a preventable accident." *Id*. Plaintiff claims that "she informed dispatch of the condition of the wall on 10/16/2021" but Dennis ignored her concerns "and any other concerns placed by other drivers of this specific location." *Id*.

On January 15, 2022,[8] Dennis made a false statement by claiming that he instructed plaintiff to see him on January 12, 2022, and that plaintiff failed to appear. *See* Dkt. No. 1 at 10. Plaintiff alleges that Dennis and Glass falsified a written reprimand regarding the January 10, 2022, incident. *See id*. at 11. Plaintiff alleges that she has a video recording from January 14, 2022, of a conversation between Dennis, Glass, and herself, documenting Dennis' ultimatum and her refusal to sign the write-up Dennis presented. *See id*. at 11.

8 Plaintiff's complaint lists this date as April 15, 2022, but it appears that this is a scrivener's error and she intended to write January 15, 2022, given the context of the other dates listed in her complaint and her claim that Waste Management terminated plaintiff's employment on January 18, 2022. *See* Dkt. No. 1 at 9-11; Dkt. No. 1-2 at 5.

On April 30, 2018, plaintiff was injured "while trying to perform her duties of [s]wapping out loaded cans onto a lift gate of a box truck." Dkt. No. 1 at 3. Plaintiff alleges that Dennis refused to provide her the proper equipment and the "lift gate was not adequate for the job." *See id*. Plaintiff suffered a right shoulder injury. *See id*.

***4** Additionally, plaintiff asserts that in the two-and-one-half years before her termination from Waste Management, five male employees were promoted to the position of commercial waste driver despite their being less experienced, less qualified, and/or having a history of accidents. *See* Dkt. No. 1 at 8. Plaintiff claims that Dennis concealed from her a job opening for a position as a "commercial waste driver" until five less experienced male employees "obtained the necessary licensing and training to be promoted to a [c]ommerical [w]aste [d]river." *Id*. Plaintiff claims that Dennis assisted these individuals to obtain the proper licensing and training, and, in at least one case, encouraged the male employee to apply for the position. *See id.*

Plaintiff seeks $1,000,000 in damages, consisting of $143,000 for three years of lost wages, $143,000 for three years of lost potential income attributable to not being promoted due to discrimination and retaliation, $600 for emotional distress and reputational harm, $200,000 in punitive damages, and $14,000 for legal fees. *See* Dkt. No. 1-3 at 1, Dkt. No. 1 at 5.

### B. **Analysis**[9]

9 Plaintiff's civil cover sheet checks the box indicating "U.S. Government" as the basis of jurisdiction. *See* Dkt. No. 1-3. However, the United States Government is not a defendant in this action. *See generally* Dkt. No. 1. Reading plaintiff's complaint liberally, and affording her due solicitude, it appears plaintiff likely intended to mean that her claims involve federal question jurisdiction. *See generally Cinotti v. Adelman*, 709 F. App'x 39, 40 (2d Cir. 2017) (summary order) ("[A]lthough [the plaintiff's] pro se complaint does not refer to 42 U.S.C. § 1983, the district court should have construed it liberally as asserting § 1983 claims, which provide a basis for federal question jurisdiction.").

Plaintiff seeks to bring this action pursuant to Title VII of the Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e-2 et seq., claiming that she was discriminated against based on her sex. [10] *See* Dkt. No. 1 at 2. *See generally* Dkt. No. 1; *see also Triestman*, 470 F.3d at 475 ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' ") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Reading plaintiff's complaint liberally and affording her due solicitude, plaintiff asserts several theories of discrimination, including (1) sex discrimination, generally; (2) disparate treatment; and (3) retaliation. *See id*. at 2-4. Plaintiff also alleges state law claims for defamation and for breach of contract. *See id*.

10 Plaintiff's civil cover sheet also checks the box for "Class Action." Dkt. No. 1-3 at 1. However, plaintiff has not named or indicated that there are any other plaintiffs in this action other than herself. *See generally* Dkt. No. 1. It is possible that plaintiff means that she is a member of a protected class as is required for her Title VII claim. *See* 42 U.S.C. § 2000e-2(a). Regardless, as a pro se plaintiff, she cannot represent any other plaintiffs in any form, including as a class representative. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998).

### 1. **Title VII Claims**

"Under Title VII, '[i]t shall be an unlawful employment practice for an employer [ ] to ... discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]' " *Phipps v. N. Rivers*, No. 1:21-CV-1036 (BKS/CFH), 2022 WL 909095, at *5 (N.D.N.Y. Mar. 29, 2022), *report and recommendation adopted*, No. 1:21-CV-1036 (BKS/CFH), 2022 WL 2666908 (N.D.N.Y. July 11, 2022) (quoting 42 U.S.C. § 2000e-2(a)(1)); *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998).

> ***5** In *Vega v. Hempstead Union Free School District*, 801 F.3d 72 (2d Cir. 2015), the Second Circuit refined the pleading standards applicable in a Title VII employment discrimination case. Vega held that in order to survive a motion to dismiss, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."

*Dass v. City Univ. of New York*, No. 18-CV-11325 (VSB), 2020 WL 1922689, at *3 (S.D.N.Y. Apr. 21, 2020) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)).

At the motion to dismiss stage, which employes the same standard of review as review pursuant to Section 1915,

> A plaintiff "is not required to plead a prima facie case under McDonnell Douglas ... to defeat a motion to dismiss." *Vega*, 801 F.3d at 84; *see also Forkin v. Local 804 Union (IBT)*, 394 F. Supp. 3d 287, 307 (E.D.N.Y. 2019) ("At the pleading stage, ... a plaintiff need not prove discrimination or even allege facts establishing every element of the *McDonnell Douglas* prima facie case."). Instead, "[t]he facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn*, 795 F.3d at 311. For employment discrimination claims under Title VII or the NYSHRL, a plaintiff must "plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87. A plaintiff may do this by "alleging facts that directly show discrimination or facts that indirectly show discrimination

> by giving rise to a plausible inference of discrimination." Id. In short, the complaint must plead facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

*Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020).

a. **Sex Discrimination: Termination**

i. **Waste Management, Inc.**

Plaintiff has sufficiently alleged that she suffered an adverse employment action. *See* Dkt. No. 1 at 8-10; Dkt. No. 1-2 at 5; *Robinson v. Dibble*, 613 F. App'x 9, 12 (2d Cir. 2015) (summary order) (noting that the plaintiff's termination constituted "adverse employment action"); *Feingold*, 366 F.3d at 152 (explaining that an "[e]xample[ ] of materially adverse employment action [is] termination of employment."). However, plaintiff has not demonstrated that her sex or sex discrimination was a motivating factor in her termination. *See* Dkt. No. 1 at 8-10; Dkt. No. 1-2 at 5; *Farmer*, 473 F. Supp. 3d at 324; *Pitter v. Target Corp.*, No. 1:20-CV-183 (MAD/CFH), 2020 WL 8474858, at *5 (N.D.N.Y. Sept. 1, 2020), *report and recommendation adopted,* No. 1:20-CV-183 (MAD/CFH), 2020 WL 7767629 (N.D.N.Y. Dec. 30, 2020) (citing *Jones v. Target Corp.*, No. 15-CV-4672 (MKB), 2016 WL 50779, at *3 (E.D.N.Y. Jan. 4, 2016) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015))) ("In the absence of direct evidence of the decision maker['s] discriminatory intent, courts focus on whether a plaintiff's allegations support a 'plausible inference of discrimination.' ").

> An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ... degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

***6** *Pitter*, 2020 WL 8474858, at *6 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)) (internal quotation marks and citation omitted).

Here, "plaintiff has not alleged any facts from which the Court can plausibly infer that her termination was due to her sex or gender." *Pitter*, 2020 WL 8474858, at *6; *see generally* Dkt. No. 1. "Plaintiff's complaint does not state any allegations regarding criticism of her performance in degrading terms" or "invidious comments about other women." *Id*. Rather, in its current form, plaintiff's complaint appears to suggest that her termination was a result of a series of events involving the filing of a safety complaint, culminating in a dispute with her supervisors and her refusal to sign written disciplinary reprimands. *See* Dkt. No. 1 at 9-11. Therefore, even after reviewing plaintiff's complaint liberally and affording her due solicitude, plaintiff's complaint, as presently plead, fails to plausibly allege that her termination was the result of "sex- or gender-based discrimination pursuant to Title VII or the NYSHRL." *Pitter*, 2020 WL 8474858, at *6. Accordingly, it is recommended that plaintiff's Title VII sex discrimination claim against Waste Management relating to her alleged unlawful termination "be dismissed without prejudice and with opportunity to amend in light of plaintiff's *pro se* status." *Id*.

ii. **Claims Against Individual Defendants**

"To the extent that plaintiff asserts her Title VII claims against the individual defendants, such claims must be dismissed because 'individuals are not subject to liability under Title VII.' " *Pitter*, 2020 WL 8474858, at *5 (quoting *Patterson v. Cty. of Oneida, New York*, 375 F.3d 206, 221 (2d Cir. 2004)) (internal quotation marks and citation omitted); *see Mandell v. Cty. of Suffolk*, 316

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

F.3d 368, 377 (2d Cir. 2003) (citation omitted) ("[T]he district court's dismissal of [the] plaintiff's Title VII claims against [the defendant] in his personal capacity must be affirmed because under Title VII individual supervisors are not subject to liability."); *Phipps*, 2022 WL 909095, at *5 (quoting *Bottge v. Suburban Propane*, 77 F. Supp. 2d 310, 313 (N.D.N.Y. 1999) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995))) ("It is well-established that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII.") (internal quotation marks omitted); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam) ("[I]ndividuals are not subject to liability under Title VII.").

Accordingly, it is recommended that plaintiff's Title VII claims, insofar as asserted against Dennis, Glass, Bender, and Mazzelli, be dismissed with prejudice and without leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim. *See Terpening v. McGinty*, No. 1:21-CV-1215 (GTS/CFH), 2022 WL 2657291, at *7 (N.D.N.Y. Apr. 28, 2022), *report and recommendation adopted,* No. 1:21-CV-1215 (GTS/CFH), 2022 WL 2115265 (N.D.N.Y. June 13, 2022) (quoting *Golden v. Syracuse Reg'l Airport Auth.*, No. 5:20-CV-1566 (MAD/TWD), 2021 WL 485731, at *1 (N.D.N.Y. Feb. 10, 2021) (quoting *Patterson,* 375 F.3d at 221)) ("A plaintiff's 'Title VII claims against [ ] individual [d]efendants must be dismissed with prejudice ... because 'individuals are not subject to liability under Title VII.' ").

> ***7** However, individual liability may lie under New York State Human Rights Law, where the individual actually participates in conduct giving rise to discrimination, and due to the "special solicitude" due to *pro se* litigants, the Court will assess plaintiff's claims as if they were brought under the New York State Human Rights Law ("NYSHRL"), pursuant to this Court's supplemental jurisdiction.

*Zheng v. Gen. Elec. Co.*, No. 1:15-CV-1232 (TJM/CFH), 2015 WL 7421961, at *2 (N.D.N.Y. Oct. 26, 2015), *report and recommendation adopted,* No. 1:15-CV-1232 (TJM/CFH), 2015 WL 7430046 (N.D.N.Y. Nov. 20, 2015) (citing *DiPetto v. U.S. Postal Serv.,* 383 F. App'x 102, 103 (2d Cir. 2010) (summary order) (citation omitted) ("[W]hile pro se complaints must contain sufficient factual allegations to meet the plausibility standard, we should look for such allegations by reading pro se complaints with 'special solicitude' and interpreting them to raise the 'strongest [claims] that they suggest.' ")); *see also Kercado-Clymer v. City of Amsterdam,* 370 F. App'x 238, 242 n.1 (2d Cir. 2010) (summary order) (additional citations omitted) (noting that the District Court properly dismissed the plaintiff's Title VII claims against his supervisor "in his individual capacity because under Title VII individual supervisors are not subject to liability" but concluding that liability "may lie under the [NYHRL] where, as here, the individual actually participates in the conduct giving rise to the discrimination claim.").

"Under the NYSHRL, individual liability attaches where an employee is shown to have an ownership interest or any power to do more than carry out personnel decisions made by others ... essentially ... the authority 'to hire or fire people." *Zheng*, 2015 WL 7421961, at *3 (quoting *Pellegrini v. Sovereign Hotels, Inc.*, 740 F.Supp.2d 344, 355 (quoting *Tomka*, 66 F.3d at 1317), *abrog. on other grounds, Burlington Indust., Inc. v. Ellerth,* 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998)) (internal quotation marks omitted).

"In order to determine whether this Court should allow plaintiff an opportunity to amend [her] complaint to see if [s]he can state a cause of action pursuant to the NYSHRL against any or all of the individual defendants, it also must be determined whether, even if granted leave to amend, plaintiff would be able to state a claim." *Zheng*, 2015 WL 7421961, at *3. Here it is unclear whether Dennis, Glass, Bender, or Mazzelli "had the ability to hire or fire employees." *Id*. "Thus, even if plaintiff could otherwise make a claim under the NYSHRL, [s]he has not provided sufficient information for the Court to determine whether such claims properly lie against the individual defendants." *Id*. Therefore, it is recommended that plaintiff "be granted an opportunity to amend h[er] complaint to raise claims for individual liability under the NYSHRL to the extent [s]he may be able to establish that any of the individual defendants alleged to have engaged in prohibited ... discriminatory conduct also had the authority to independently hire or fire." [11] *Id*.

11 "In making this recommendation, the undersigned offers no opinion whether plaintiff may be able to successfully plead such claims or that such claims could withstand a motion to dismiss or summary judgment." *Zheng*, 2015 WL 7421961, at *3, n.6.

Assuming, *arguendo*, that Dennis, Glass, Bender, and/or Mazzelli had the ability to hire and fire employees, the undersigned will next address whether plaintiff's complaint, as pleaded, could raise a claim for gender discrimination under the NYSHRL. *See Zheng*, 2015 WL 7421961, at *2-3.

***8** Historically, in order to plead, at the motion to dismiss stage, an "employment discrimination claim[ ] under Title VII ... or the NYSHRL, a plaintiff must 'plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.' " *Farmer*, 473 F. Supp. 3d at 324 (quoting *Vega*, 801 F.3d at 87). "A plaintiff may do this by 'alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.' " *Id.* (quoting *Vega*, 801 F.3d at 87). "In short, the complaint must plead facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.' " *Id*. (quoting *Littlejohn*, 795 F.3d at 311).

"However, [t]he New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard of the [New York City Human Rights Law ("NYCHRL")]." *Herrera v. Syracuse Univ.*, No. 5:24-CV-245 (AMN/ML), 2025 WL 874734, at *15 (N.D.N.Y. Mar. 20, 2025) (quoting *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021)).

> New York courts have not definitively resolved the question of how this amendment changes standards of liability under the NYSHRL, but the Second Circuit has noted that the New York Court of Appeals has constru[ed] the NYSHRL and NYCHRL claims together in [a]pplying the mandate to interpret these laws broadly, and lower courts have treated NYSHRL and NYCHRL claims as coextensive.

*Ricciardo v. NYU Hosps. Ctr.*, No. 22-CV-4952 (MKB), 2025 WL 2208371, at *25 (E.D.N.Y. Aug. 4, 2025) (first quoting *Cooper v. Franklin Templeton Invs.*, No. 22-2763-CV, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023)), then quoting *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45, n.9 (2d Cir. 2025), then quoting *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 452 (N.Y. 2024) (internal citations and quotation marks omitted); *Herrera*, 2025 WL 874734, at *15 (citing *e.g.*, *Syeed*, 41 N.Y.3d at 452 and *Alshami v. City Univ. of N.Y.*, 203 A.D.3d 592, 592 n.1 (1st Dept. 2022)) ("While Second Circuit courts are currently split over the extent to which NYSHRL standards should be equated with NYCHRL standards, New York state courts have recently treated the two as coextensive.").

"Discrimination claims brought under NYCHRL 'are to be reviewed more liberally than Title VII claims, and the provisions of [NYCHRL] must be construed broadly in favor of plaintiffs alleging discrimination.' " *Herrera*, 2025 WL 874734, at *15 (quoting *Levy v. Legal Aid Soc.*, 408 F. Supp. 3d 209, 217 (E.D.N.Y. 2019) (citing *Johnson v. Andy Frain Svcs., Inc.*, 638 F. App'x. 68, 71 (2d Cir. 2016) (summary order))). "Unlike Title VII, NYCHRL does not require a plaintiff alleging discrimination to prove an adverse employment action." *Id*. (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013)). "Rather, the plaintiff need only show differential treatment – that she is treated less well – because of a discriminatory intent." *Id.* (quoting *Mihalik*, 715 F.3d at 110 (citing *Williams v. N.Y.C. Hous. Auth.*, 61 A.D. 3d 62, 77 (1st Dept. 2009))) (internal quotation marks omitted). "Indeed, the challenged conduct need not even be tangible (like hiring or firing)." *Mihalik*, 715 F.3d at 110 (citing *Williams,* 61 A.D. 3d at 79). "Even under this more liberal standard, however, plaintiffs must still allege facts that give rise to 'a minimal inference of discriminatory motivation.' " *Herrera*, 2025 WL 874734, at *15 (quoting *Cruz v. Local 32BJ*, No. 22-Civ-3068, 2024 WL 4357036, at *19 (S.D.N.Y. Sept. 30, 2024) (quoting *Littlejohn*, 795 F.3d at 311)); *see also Ward v. Cohen Media Publ'ns LLC*, No. 22-CV-6431, 2023 WL 5353342, at *15 (S.D.N.Y. Aug. 21, 2023) ("[E]ven under the more lenient requirements of the NYCHRL, [a] plaintiff's claims must be more than conclusory or speculative to survive

a motion to dismiss.") (citation omitted). "Allegations that a plaintiff subjectively believes that her employer was engaged in discrimination are 'legally irrelevant' and cannot serve as a basis to state a claim upon which relief could be granted." *Mihalik*, 715 F.3d at 110 (citing *Farmer*, 473 F. Supp. 3d at 328); *see also Lugo v. City of New York*, 518 F. Appx. 28, 30 (2d Cir. 2013) (summary order) ("While the NYCHRL is indeed reviewed independently from and more liberally than federal [ ] discrimination claims ... it still requires a showing of some evidence from which discrimination can be inferred." (internal quotation marks and citation omitted)).

***9** As plaintiff's claims accrued after the June 2019 amendments, and courts within the Second Circuit "have treated NYSHRL and NYCHRL claims as coextensive," the undersigned will analyze plaintiff's claims under both standards. *Ricciardo*, 2025 WL 2208371, at *25. Here, under the more liberal standard of review, plaintiff has demonstrated differential treatment because she was fired. *See* Dkt. No. 1 at 9-11. Under the original NYSHRL standard, plaintiff's termination also amounts to an adverse action. However, plaintiff's complaint does not "giv[e] rise to a plausible inference of discrimination" or provide "minimal support for the proposition that the employer was motivated by discriminatory intent." *Farmer*, 473 F. Supp. 3d at 324 (first quoting *Vega*, 801 F.3d at 87, then quoting *Littlejohn*, 795 F.3d at 311); *Herrera*, 2025 WL 874734, at *15. Plaintiff's complaint does not suggest that her sex was "a motivating factor in the employment decision." *Id*. Rather plaintiff's complaint, in its current form, suggests that her termination was due to reasons other than gender discrimination, i.e. a dispute with her supervisors. *See* Dkt. No. 1 at 9-11.

Therefore, undersigned concludes that, even liberally read, plaintiff's complaint has not sufficiently alleged gender discrimination under the NYSHRL, whether the original standard or NYCHRL standard is applied. *See Farmer*, 473 F. Supp. 3d at 324; *Herrera*, 2025 WL 874734, at *15. The undersigned recommends that plaintiff be given an opportunity to amend should she wish to raise a claim for gender discrimination claim under the NYSHRL against Dennis, Glass, Bender, and Mazzelli.

### b. **Disparate Treatment**

"To state a claim for disparate treatment under Title VII, 'a plaintiff must plausibly allege that (1) the employer took adverse action against [her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision.' " *Krul v. Brennan*, 501 F. Supp. 3d 87, 96 (N.D.N.Y. 2020) (quoting *Vega*, 801 F.3d at 87). As to the first element, "[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Id*. (quoting *Morris v. New York State Police*, 268 F. Supp. 3d 342, 363 (N.D.N.Y. 2017)) (citation omitted). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Morris*, 268 F. Supp. 3d at 363 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)) (internal quotation marks omitted).

> "While there is no exhaustive list of what constitutes an adverse employment action, courts have held that the following actions, among others, may qualify: discharge or demotion; denial of a provisional or permanent promotions; involuntary transfer that entails objectively inferior working conditions; denial of benefits; denial of a requested employment accommodation; denial of training that may lead to promotional opportunities; and a shift assignment that makes a normal life difficult for the employee."

*Sotak v. Bertoni*, 501 F. Supp. 3d 59, 79 (N.D.N.Y. 2020) (quoting *Little v. National Broad. Co., Inc.*, 210 F. Supp. 2d 330, 377 (S.D.N.Y. 2002)); *Morris*, 268 F. Supp. 3d at 363 (quoting *Vega*, 801 F.3d at 85) ("Examples of materially adverse changes including termination of employment, a demotion evidence[d] by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.").

"As to the second element, an action is 'because of' a plaintiff's race, color, religion, sex, or national origin where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." *Krul*, 501 F. Supp. 3d at 96 (quoting *Vega*, 801 F.3d at 85) (citation omitted). In other words, "a plaintiff in a Title VII case need not allege 'but-for' causation." *Id.* (quoting *Vega*, 801 F.3d at 86).

Plaintiff's complaint alleges that her similarly-situated male coworkers were afforded favorable treatment and working conditions, she was denied "training that may lead to promotional opportunities," and she was denied career advancement opportunities. *Sotak*, 501 F. Supp. 3d at 79; *see* Dkt. No. 1 at 8-10. More specifically, plaintiff claims that Dennis concealed job openings for a position of "commercial waste driver" from her and she was forced to drive an unsafe truck. *See id*. at 8, 10. Conversely, plaintiff claims alleges that at least three male coworkers were provided the training necessary to obtain the experience and licensures to be promoted to a commercial waste driver position. *See id*. at 8. Plaintiff states that in the two-and-one-half years prior to her termination, four male coworkers were promoted to commercial waste driver and at least one male coworker had a route created for him. *See id*.

***10** "At the pleadings stage, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination ... Plaintiff has done so here." *Krul*, 501 F. Supp. 3d at 98 (quoting *Vega*, 801 F.3d at 87 (citing *Littlejohn*, 795 F.3d at 310)) (internal quotation marks omitted). Therefore, the undersigned recommends that plaintiff's Title VII disparate treatment claim against Waste Management be permitted to proceed. [12]

12 The undersigned makes no conclusion as to whether such claim could survive a properly filed and supported dispositive motion.

c. **Retaliation**

Reading plaintiff's complaint liberally, and affording her due solicitude, she raises a Title VII claim for retaliation against Waste Management. *See* Dkt. No. 9-11. To state a prima facie Title VII retaliation claim "the plaintiff must plausibl[y] allege that: (1) defendants discriminated—or took an adverse employment action—against [her]; (2) 'because' [she] has opposed any unlawful employment practice." *Krul*, 501 F. Supp. 3d at 99 (quoting *Vega*, 801 F.3d at 90). "In the context of a retaliation claim, an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*. (quoting *Vega*, 801 F.3d at 90) (internal quotation marks and additional citation omitted). "This definition covers a [broader range] of conduct than does the adverse-action standard for claims of discrimination under Title VII: '[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.' " *Id.* (quoting *Vega*, 801 F.3d at 90).

In evaluating Title VII retaliation claims,

> "Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination."

*Krul*, 501 F. Supp. 3d at 99-100 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)).

"As for causation, a plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity." *Krul*, 501 F. Supp. 3d at 100 (quoting *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e-3(a))). "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Id*. (quoting *Vega*, 801 F.3d at 90). "Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id*. (quoting *Vega*, 801 F.3d at 90); *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation[.]").

***11** "As relevant here a plaintiff engages in protected activity when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Jacobs v. Hudson Valley Fam. Physicians, PLLC*, 725 F. Supp. 3d 235, 247 (N.D.N.Y. 2024) (quoting *Davis v. NYS Dept. of Corr. Attica Corr. Facility*, 110 F.Supp.3d 458, 462 (W.D.N.Y. 2015) (quoting *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012))) (internal quotation marks omitted); *Stathatos v. Gala Res., LLC*, No. 06 CIV. 13138 RLC, 2010 WL 2024967, at *12 (S.D.N.Y. May 21, 2010) (citing 42 U.S.C. § 2000e-3(a)) ("Protected activity is that which opposes unlawful employment practices under Title VII."); *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 101 (S.D.N.Y. 2023) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (*per curiam*)) ("An employee's complaint qualifies as protected activity so long as the employee has a good faith, reasonable belief (assessed in light of the totality of the circumstances) that the employee was 'opposing an employment practice made unlawful by Title VII.' ").

"Protected activities can also include informal protests of discriminatory employment practices, including making complaints to management provided that they are sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII." *Jacobs*, 725 F. Supp. 3d at 247 (quoting *Arkorful v. N.Y.C. Dept. of Educ.*, 712 F. Supp. 3d 336, 356, (E.D.N.Y. Jan. 24, 2024) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012))) (internal quotation marks omitted); *Risco*, 868 F. Supp. 2d at 110 ("[C]omplaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII. Generalized complaints about a supervisor's treatment are insufficient.").

Here, plaintiff alleges that she complained to Mazzelli that her work truck would not start, failed a mandatory pre-trip safety inspection, and was unsafe to drive. *See* Dkt. No. 9-10. Plaintiff also claims that Dennis instructed her to drive the unsafe truck in violation of New York State DOT rules or "go home." *Id*. at 10. Plaintiff asserts that Dennis issued her a written reprimand for her refusal to drive the unsafe truck and terminated her employment when she refused to sign the written reprimand. *See id*. at 10-11. However, plaintiff has failed to connect the alleged retaliatory reprimand and employment termination to a protected Title VII activity. *See Jacobs*, 725 F. Supp. 3d at 247. Plaintiff has alleged retaliation generally but has not linked Waste Management's retaliation to (1) her opposition to an employment practice prohibited by Title VII; (2) her claim of sex discrimination; or (3) an informal protest of discriminatory employment practices. *See id*. It is unclear how plaintiff's safety complaints are protected by Title VII. *See id*. Thus, the undersigned concludes that plaintiff's complaint, in its current form, has not sufficiently pled Title VII retaliation. *See Krul*, 501 F. Supp. 3d at 99 (quoting *Vega*, 801 F.3d at 90). Therefore, the undersigned recommends that plaintiff's Title VII retaliation claim be dismissed without prejudice and with leave to amend.

### 2. New York State Law Claims

Plaintiff lists defamation and breach of contract as her second and third causes of action. *See* Dkt. No. 1 at 4. Claims for defamation and breach of contract arise under New York State law. *See OnActuate Consulting Inc. v. Aeon Nexus Corp.*, No. 1:20-CV-508 (LEK/CFH), 2022 WL 866418, at *7 (N.D.N.Y. Mar. 23, 2022); *Zheng*, 2015 WL 7421961, at *3 ("A claim for defamation against non-governmental employees arises under New York State common law."). As such, the undersigned evaluates whether the Court should exercise supplemental jurisdiction to hear plaintiff's state law claims.

***12** "Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to form part of the same case or controversy under Article III of the United States Constitution." *Milner-Koonce v. Albany City Sch. Dist.*, No. 1:21-CV-1271 (LEK/CFH), 2022 WL 1500995, at *10 (N.D.N.Y. May 12, 2022), *report and recommendation adopted as modified,* No. 1:21-CV-1271 (LEK/CFH), 2022 WL 2339443 (N.D.N.Y. June 29, 2022) (quoting *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)) (internal quotation marks omitted). "A state law claim forms part of the same controversy if it and the federal claim 'derive from a common nucleus of operative fact.' " *Id*. (quoting *Briarpatch Ltd., L.P*, 373 F.3d at 308 (quoting *Cicio v. Does*, 321 F.3d 83, 97 (2d Cir. 2003)) vacated on other grounds *Vytra Healthcare v. Cicio*, 542 U.S. 933 (2004)) (additional citation omitted).

"This is so even if the state law claim is asserted against a party different from the one named in the federal claim." *Id*. (quoting *Briarpatch Ltd., L.P*, 373 F.3d at 308 (first citing 28 U.S.C. § 1367(a) (2000), then citing *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000))). "Claims derive from a common nucleus of operative fact where 'the facts underlying the federal and state claims substantially overlapped or the federal claims necessarily brought the facts underlying the state claim before the court.' " *Id*. (quoting *Kriss v. Bayrock Grp., LLC*, 10 CIV. 3959 (LGS/DCF), 2017 WL 4023351, at *2 (S.D.N.Y. Sept. 12, 2017) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006))). "To form part of the same case or controversy, the claims must 'arise out of the same series of events.' " *Id*. (quoting *Thompson v. Urb. Recovery House, LLC*, No. 20 CIV. 9581 (PGG/JLC), 2022 WL 589957, at *7 (S.D.N.Y. Feb. 28, 2022), *report and recommendation adopted sub nom. Thompson v. Elev8 Ctr. New York, LLC*, No. 20 CIV. 9581 (PGG), 2022 WL 4547411 (S.D.N.Y. Sept. 29, 2022).

Here, it appears that plaintiff's defamation and breach of contract claims arise out of the same "nucleus of operative fact" as her Title VII claims. *See* Dkt. No. 1 at 9-11. Plaintiff appears to assert that Dennis and Glass defamed her by "making false statements about what happened" during a meeting in which she refused to sign Dennis' written reprimands. *See id*. at 10-11. In turn, plaintiff claims that Waste Management breached her employment contract when it terminated her employment for refusing to sign the written reprimands. *See id.* at 4, 10-11. "As the federal claims bring the facts underlying the state claim before the Court, the undersigned will turn to the merits of the state law claims to determine if plaintiff has sufficiently stated a claim for relief." *Milner-Koonce*, 2022 WL 1500995, at *10 (citing *Kriss*, 2017 WL 4023351, at *2).

a. **Defamation**

"Under New York law, '[d]efamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander.' " *Phipps*, 2022 WL 909095, at *7 (quoting *Kennedy v. City of New York*, No. 12 CIV. 4166 (KPF), 2015 WL 6442237, at *12 (S.D.N.Y. Oct. 23, 2015) (quoting *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013))). "Under New York law, slander is defined as '(1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) either causing special harm or constituting slander per se, and (7) not protected by privilege.' " *Id*. (quoting *O'Diah v. Yogo Oasis*, 954 F. Supp. 2d 261, 275 (S.D.N.Y. 2013) (quoting *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001))) (internal quotation marks omitted). Further, "truth is an absolute defense to an action based on defamation." *Id*. (quoting *Fine v. ESPN, Inc.*, 11 F. Supp.3d 209, 224 (N.D.N.Y. Mar. 31, 2014)) (additional citation omitted).

***13** Under New York State law, defamation claims are subject to a one-year statute of limitations. *See* N.Y. C.P.L.R. § 215(3). Under New York law, "[n]o court shall extend the time limited by law for the commencement of an action." N.Y. C.P.L.R. § 201. "Claims for slander generally accrue[ ] on the date of the first publication." *Phipps*, 2022 WL 909095, at *8 (quoting *Rissetto v. County of Clinton*, 8:15-CV-720 (GTS/CFH), 2016 WL 4530473, at *33, n.105 (quoting *Hoesten v. Best*, 34 A.D. 3d 143, 150 (N.Y. App. Div. 2006)), *accord. Karam v. First Am. Bank of New York*, 190 A.D.2d 1017, 1018 (N.Y. App. Div. 4th Dept. 1993) ("In an action for slander, the Statute of Limitations runs from the time of the utterance, not the discovery of the slanderous matter.")).

Here, plaintiff alleges that she was slandered on either January 10, 2022, January 14, 2022, or April 15, 2022. *See* Dkt. No. 1 at 10-11. For purposes of this review only, the undersigned will assume that plaintiff was slandered on April 15, 2022, as that date is most favorable to plaintiff. Thus, plaintiff had until April 15, 2023, to file a defamation claim. *See* N.Y. C.P.L.R. § 215(3); *Phipps*, 2022 WL 909095, at *8. As plaintiff commenced this action on December 10, 2024, she brought her action after the one-year statute of limitations has expired, making her defamation claim barred by the statute of limitations. *See* N.Y. C.P.L.R. § 215(3).

Here, plaintiff does not argue equitable tolling nor does she "articulate any acts by defendants that prevented [her] from timely commencing suit" with respect to her defamation claim. *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir 2007) (brackets omitted). However, if given an opportunity to amend, plaintiff may arguably allege that equitable tolling applies to this matter if she

were prevented from filing her defamation claim within the one-year statute of limitations. "Equitable tolling of the statute of limitations is applicable in certain situations where the Court determines that a plaintiff should, in fairness, be excused from his or her lateness in filing a complaint." *Sides v. Paolano*, No. 9:15-CV-1203 (MAD/CFH), 2020 WL 6530751, at *4 (N.D.N.Y. June 3, 2020), *report and recommendation adopted,* No. 9:15-CV-1203 (MAD/CFH), 2020 WL 5511414 (N.D.N.Y. Sept. 14, 2020), aff'd, No. 20-3241, 2021 WL 4256864 (2d Cir. Sept. 20, 2021) (citing *Gonzalez v. Hasty*, 651 F.3d 318, 323-24 (2d Cir. 2011)). "Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Id*. (quoting *Gonzalez*, 651 F.3d at 322) (quoting *Veltri v. Bldg. Serv. 32-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004)); *Zirvi v. Flatley*, 838 F. App'x 582, 587 (2d Cir. 2020) (same); *New York State Marine Highway Transportation, LLC v. New York State Dep't of Transportation*, 459 F. Supp. 3d 470, 477 (N.D.N.Y. 2020) (same). "The plaintiff bears the burden of showing that he or she is entitled to equitable tolling." *Id*. (citing *Abbas*, 480 F.3d at 642).[13] Accordingly, the undersigned concludes that plaintiff's defamation claim must be dismissed as barred by the statute of limitations. However, out of an abundance of caution, the undersigned recommends dismissing plaintiff's defamation claims against Dennis and Glass without prejudice and with leave to renew because it is possible that plaintiff could plead that she is entitled to equitable tolling.[14] *See* N.Y. C.P.L.R. §§ 215(3), 201; *Sides*, 2020 WL 6530751, at *4.

13 "Neither a mistake of law nor pro se status is sufficient for equitable tolling." *DiBenedetto v. Coley*, No. 24-1029-CV, 2024 WL 4662979, at *2 (2d Cir. Nov. 4, 2024) (citing *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016) and *Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000)).

14 The undersigned makes no finding as to whether plaintiff could successfully plead equitable tolling.

b. **Breach of Contract**

***14** "A cause of action alleging breach of contract is governed by a six-year statute of limitations and accrues at the time of the alleged breach." *CDx Lab'ys, Inc. v. Zila, Inc.*, 80 N.Y.S.3d 382, 383 (App. Div. 2018) (first citing CPLR § 213(2), then citing *Hahn Automotive Warehouse, Inc. v. American Zurich Ins. Co.,* 18 N.Y.3d 765, 770 (2012)). "Breach of contract under New York law requires a party to allege (1) the existence of an agreement, (2) adequate performance of the contract by the [claimant], (3) breach of contract by the [opposing party], and (4) damages." *OnActuate Consulting Inc.*, 2022 WL 866418, at *7 (quoting *Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 478 (S.D.N.Y. 2019)). "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Syracuse v. Loomis Armored US, LLC*, No. 5:11-CV-744 (MAD), 2012 WL 88332, at *4 (N.D.N.Y. Jan. 11, 2012) (quoting *Wolff v. Rare Medium, Inc.,* 171 F. Supp.2d 354, 358 (S.D.N.Y. 2001)).

"In order to adequately allege the existence of an agreement, a plaintiff must plead the provisions of the contract upon which the claim is based." *Syracuse*, 2012 WL 88332, at *4 (quoting *Howell v. American Airlines, Inc.,* No. 5-CV-3628, 2006 WL 3681144, *3 (E.D.N.Y. Dec. 11, 2006) (internal quotation marks and additional citation omitted)). "A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim." *Id.* (quoting *Howell*, 2006 WL 3681144, *3 (additional citations omitted)). "However, the complaint must at least set forth the terms of the agreement upon which liability is predicated ... by express reference." *Id.* (quoting *Howell*, 2006 WL 3681144, *3) (internal quotation marks and additional quotations omitted).

Plaintiff's complaint states, "Mary-Rose F. Calenzo signed the agreed upon terms on 3/5/2018." Dkt. No. 1 at 9. Plaintiff claims that Dennis breached the contract on November 2021[15] "[w]hen he made changes to the route sequencing that was in violation of company policy." *Id*. Plaintiff was terminated effective January 18, 2022. See Dkt. No. 1-2 at 5. Plaintiff alleges that she adequately performed her job duties as a truck driver pursuant to the terms of this agreement, and that Waste Management breached the contract by changing the conditions of her employment. *See id.* at 9. Read liberally and with special solicitude, it also appears that plaintiff is contending that defendants further breached the contract by terminating her employment in


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

retaliation for her refusing to sign written reprimands falsely accusing her of safety violations and insubordination. See id. at 9-11. Plaintiff's complaint also alleges that she suffered damages resulting from the termination of her employment. *See id.* at 5.

15 New York has a six-year statute of limitations for breach-of-contract claims, and that the limitations period begins to run when the cause of action accrues. *See Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 470 (S.D.N.Y. 2010). Plaintiff's beach-of-contract claim, based on the information presently before the undersigned, appears timely.

However, plaintiff has not demonstrated the existence of a contractual agreement or set forth the terms of any said agreement that were breached. *See* Dkt. No. 9; *see also OnActuate Consulting Inc.*, 2022 WL 866418, at *7; *Syracuse*, 2012 WL 88332, at *4. Rather, plaintiff conclusorily states that "changes to the route sequencing," and, arguably, her termination of employment, breached her contract with Waste Management. *See* Dkt. No. 1 at 9-11. She has not submitted a copy of her contract nor provided the Court with sufficient details about the terms she alleges to have been breached.

***15** Accordingly, the undersigned recommends that plaintiff's breach of contract claim be dismissed without prejudice and with leave to amend to demonstrate the existence and terms of any contract between plaintiff and Waste Management that she alleges were breached. *See OnActuate Consulting Inc.*, 2022 WL 866418, at *7 (quoting *Red Fort Cap., Inc.*, 397 F. Supp. 3d at 478).

## IV. **Leave to Amend**

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gerken v. Gordon*, No. 1:24-CV-00435 (MAD/CFH), 2024 WL 4608307, at *15 (N.D.N.Y. Oct. 29, 2024), *report and recommendation adopted*, No. 1:24-CV-435 (MAD/CFH), 2024 WL 5001402 (N.D.N.Y. Dec. 6, 2024) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation and internal quotation marks omitted)). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " *Id.* (citing *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019)) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, plaintiff's Title VII sex discrimination claim against the individual defendants is barred by law and cannot be cured by a better pleading. The defamation claim against Dennis and Glass for monetary damages may be subject to equitable tolling and can possibly be cured by a better pleading. The Title VII unlawful termination and retaliation claims against Waste Management; the breach of contract claim against Waste Management; and the potential NYSHRL claim against the individual defendants may be cured by a better pleading. Accordingly, it is recommended that insofar as plaintiff seeks to proceed against (1) the individual defendants pursuant to Title VII for sex discrimination, such request be dismissed in its entirety with prejudice and without opportunity to amend. It is also recommended that plaintiff's claims for (1) defamation against Dennis and Glass; (2) Title VII unlawful termination and retaliation against Waste Management; (3) breach of contract against Waste Management, be dismissed in their entirety without prejudice and with opportunity to amend. [16] It is further recommended that plaintiff's Title VII disparate treatment claim against Waste Management be permitted to proceed. [17] It is also recommended that plaintiff be afforded an opportunity to amend to raise a NYSHRL claim against Waste Management and the individual defendants should she wish to do so.

16 In the event the District Judge adopts the undersigned's Report-Recommendation and Order and plaintiff is permitted to amend her complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference. Any amended pleading supersedes and replaces a prior pleading in its entirety. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

17 It is recommended that such claim not be served upon defendants until after it is determined whether plaintiff will be permitted to, and will seek, to amend as to her other claims.

IV. **Conclusion**

***16 WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED**, that insofar as plaintiff seeks to proceed against Mazzelli, Dennis, Bender, and Glass for Title VII gender discrimination (Dkt. No. 1), such claims be **DISMISSED with prejudice and without opportunity to amend**; and it is further

**RECOMMENDED**, that insofar as plaintiff seeks to proceed against Dennis and Glass for defamation (Dkt. No. 1), such claim be **DISMISSED without prejudice and with opportunity to amend** should she wish to plead equitable tolling; it is further

**RECOMMENDED**, that insofar as plaintiff may seek to proceed against Mazzelli, Dennis, Bender, and Glass under the NYSHRL for sex discrimination, plaintiff be given an opportunity to amend to raise such claim; and it is further

**RECOMMENDED**, that insofar as plaintiff may seek to proceed against Waste Management for: (1) Title VII unlawful termination and retaliation, and (2) for breach of contract, plaintiff's complaint (Dkt. No. 1) be **DISMISSED without prejudice and with leave to amend**; and it is further

**RECOMMENDED**, that plaintiff's claim for disparate treatment against Waste Management under Title VII be permitted to proceed;[18] and it is further

18 It is recommended that if the District Judge adopts this Report-Recommendation and Order in its entirety, plaintiff be given thirty (30) days from the District Judge's Order adopting the Report-Recommendation and Order to file an Amended Complaint, and if plaintiff does not so amend, the case proceed solely on the Title VII disparate treatment claim against Waste Management.

**RECOMMENDED**, that if, following her review of this Report-Recommendation and Order, the District Judge adopts this Report-Recommendation and Order, plaintiff be given thirty (30) days from the filing date of the District Judge's Decision and Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not timely file an amended complaint pursuant to the District Judge's Decision and Order, the Clerk may close this case without the requirement of further order of the Court; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[19]

19 If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen-day (14) period, meaning that you have seventeen (17) days from the date the Report-

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).

**All Citations**

Slip Copy, 2025 WL 2700243

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2693776
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mary-Rose F. CALENZO, Plaintiff,
v.
WASTE MANAGEMENT, INC., et al., Defendants.

1:24-cv-01499 (AMN/PJE)
|
Signed September 22, 2025

**Attorneys and Law Firms**

MARY-ROSE F. CALENZO, 553 Coyote Circle, Midway Park, North Carolina 28544, Plaintiff, pro se.

**ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

***1** On December 10, 2024, Plaintiff Mary-Rose F. Calenzo, commenced this action *pro se* against her former employer, Waste Management, Inc. ("Waste Management"), and her former coworkers, James Dennis, Michael Glass, Raymond Bender, and Joseph Mazzelli (collectively, the "Individual Defendants"), alleging claims of discrimination and related state law claims. *See* Dkt. No. 1 ("Complaint").[1]

1 Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

This matter was referred to United States Magistrate Judge Paul J. Evangelista, who reviewed the Complaint pursuant to 28 U.S.C. § 1915(e), and on August 26, 2025, recommended that (i) Plaintiff's Title VII claims against the Individual Defendants be dismissed with prejudice; (ii) Plaintiff's Title VII claim of disparate treatment as against Waste Management be permitted to proceed; (iii) Plaintiff's claims of unlawful termination, retaliation, and breach of contract as against Waste Management be dismissed without prejudice; and (iv) Plaintiff's defamation claim as against Defendants Dennis and Glass be dismissed without prejudice. *See* Dkt. No. 5 at 31-32 ("Report-Recommendation"). Magistrate Judge Evangelista also recommended that Plaintiff may amend her Complaint to raise claims of discrimination under the New York State Human Rights Law ("NYSHRL") as against the Individual Defendants. *Id.* at 32. Magistrate Judge Evangelista advised that pursuant to 28 U.S.C. § 636(b)(1), the Parties had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id*. at 32-33. No objections have been filed, and the time for filing objections has expired.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

**II. STANDARD OF REVIEW**

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 228 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). "When performing such a 'clear

error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, 21-cv-01138, 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, 17-cv-0367, 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). After appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**III. DISCUSSION**

***2** Because neither party has filed any objections to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error.

First, Magistrate Judge Evangelista recommended that Plaintiff's Title VII claims against the Individual Defendants be dismissed with prejudice for failure to state a claim because "individuals are not subject to liability under Title VII." Dkt. No. 5 at 12; *see also Pitter v. Target Corp.*, 20-cv-183, 2020 WL 8474858, at *5 (N.D.N.Y. Sept. 1, 2020) (internal citations and quotations omitted), report and recommendation adopted, 2020 WL 7767629 (N.D.N.Y. Dec. 30, 2020); *Terpening v. McGinty*, 21-cv-1215, 2022 WL 2657291, at *7 (N.D.N.Y. Apr. 28, 2022) (internal citations and quotations omitted), report and recommendation adopted, 2022 WL 2115265 (N.D.N.Y. June 13, 2022).

Second, Magistrate Judge Evangelista recommended that Plaintiff's Title VII disparate treatment claim as against Waste Management be permitted to proceed. Dkt. No. 5 at 20. "To state a claim for disparate treatment under Title VII, 'a plaintiff must plausibly allege that (1) the employer took adverse action against her, and (2) her race, color, religion, sex, or national origin was a motivating factor in the employment decision.' " *Krul v. Brennan*, 501 F. Supp. 3d 87, 96 (N.D.N.Y. 2020) (cleaned up) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)). Magistrate Judge Evangelista found that Plaintiff alleged facts that at a minimum, give rise to a plausible inference of discrimination, *see Krul*, 501 F. Supp. 3d at 98, thereby permitting Plaintiff's disparate treatment claim to proceed as against Waste Management. Dkt. No. 5 at 20. Plaintiff alleged that "her similarly-situated male coworkers were afforded favorable treatment and working conditions, she was denied 'training that may lead to promotional opportunities,' and she was denied career advancement opportunities." *Id.* at 19 (quoting *Sotak v. Bertoni*, 501 F. Supp. 3d 59, 79 (N.D.N.Y. 2020)); *see also* Dkt. No. 1 at 8-10. Plaintiff also contended that job openings for the position of commercial waste driver were concealed from her, while at least three male coworkers were provided the necessary training to be promoted to the position of commercial waste driver, and four male coworkers were promoted to that position during the 2.5 years prior to Plaintiff's termination. *See* Dkt. No. 1 at 8.

Third, Magistrate Judge Evangelista recommended that Plaintiff's unlawful termination and retaliation claims under Title VII as against Waste Management be dismissed without prejudice. Dkt. No. 5 at 12, 23. Regarding Plaintiff's termination claim, Magistrate Judge Evangelista found that Plaintiff had not alleged any facts to plausibly infer that Plaintiff's sex or gender was a motivating factor in her termination. Dkt. No. 5 at 10-11; *see also* Dkt. No. 1 at 9-11 (alleging that Plaintiff's termination stemmed from a series of events including Plaintiff filing a safety complaint, a dispute between Plaintiff and her supervisors, and Plaintiff's refusal to sign written disciplinary reprimands). Regarding Plaintiff's retaliation claim, Magistrate Judge Evangelista concluded that Plaintiff failed to link the alleged retaliation to Title VII-protected activity. Dkt. No. 5 at 23; *see also Krul*, 501 F. Supp. 3d at 99 (quoting *Vega*, 801 F.3d at 90) (explaining that to state a claim of retaliation under Title VII, a plaintiff must plausibly plead a connection between the alleged retaliatory act and engagement in a protected Title VII activity).

***3** Fourth, Magistrate Judge Evangelista recommended that Plaintiff's breach of contract claim under New York law as against Waste Management be dismissed. Dkt. No. 5 at 29-30. Magistrate Judge Evangelista found that Plaintiff failed to adequately plead the provisions of the contract upon which her claim is based, as Plaintiff did not submit a copy of the contract nor provide

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

sufficient details about the contract terms alleged to have been breached. *Id.* at 29. Accordingly, Magistrate Judge Evangelista recommended the dismissal of Plaintiff's breach of contract claim without prejudice and with leave to amend. *Id.* at 29-30.

Fifth, Magistrate Judge Evangelista recommended the dismissal of Plaintiff's defamation claim against Defendants Dennis and Glass because the claim is barred by the statute of limitations. *Id.* at 27. The statute of limitations elapsed on April 15, 2023 (assuming the date most favorable to Plaintiff) and Plaintiff commenced this action on December 10, 2024. [2] *See* Dkt. No. 5 at 26. Magistrate Judge Evangelista thus recommended the dismissal of Plaintiff's defamation claim but with leave to amend to afford Plaintiff the opportunity to plead entitlement to equitable tolling. *See id.* at 27; *see also Sides v. Paolano*, 15-cv-1203, 2020 WL 6530751, at *4 (N.D.N.Y. June 3, 2020) ("Equitable tolling of the statute of limitations is applicable in certain situations where the Court determines that a plaintiff should, in fairness, be excused from his or her lateness in filing a complaint."), report and recommendation adopted, 2020 WL 5511414 (N.D.N.Y. Sept. 14, 2020).

2 Defamation claims are subject to a one-year statute of limitations under New York law, *see* N.Y. C.P.L.R. § 215(3), and claims of slander generally accrue on the date of the first publication. *See Phipps v. N. Rivers*, 21-cv-1036, 2022 WL 909095, at *8 (N.D.N.Y. Mar. 29, 2022) report and recommendation adopted, 2022 WL 2666908 (N.D.N.Y. July 11, 2022).

Lastly, Magistrate Judge Evangelista recommended that Plaintiff be granted an opportunity to amend her Complaint to raise claims of individual liability under the NYSHRL to the extent any of the Individual Defendants have the authority to independently hire or fire personnel. Dkt. No. 5 at 18; *see also Zheng, v. Gen. Elec. Co.*, 15-cv-1232, 2015 WL 7421961, at *3 (N.D.N.Y. Oct. 26, 2015) ("Under the NYSHRL, individual liability attaches where an employee ... [has] the authority to hire or fire people.") (internal citations and quotations omitted), report and recommendation adopted, 2015 WL 7430046 (N.D.N.Y. Nov. 20, 2015).

Having reviewed the Report-Recommendation and considered Magistrate Judge Evangelista's findings as to each claim, the Court finds no clear error in the Report-Recommendation. Accordingly, the Court adopts the Report-Recommendation in its entirety.

**IV. CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 5, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's Title VII claims against the Individual Defendants be **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that Plaintiff's claim of disparate treatment under Title VII as against Waste Management be permitted to proceed; and the Court further

**ORDERS** that Plaintiff's claims of unlawful termination and retaliation under Title VII and breach of contract as against Waste Management be **DISMISSED without prejudice and with leave to amend**; and the Court further

**ORDERS** that Plaintiff's defamation claim against Defendants Dennis and Glass be **DISMISSED without prejudice and with leave to amend**; and the Court further

***4 ORDERS** that Plaintiff may file an Amended Complaint **within THIRTY (30) DAYS** of this Order; and the Court further

**ORDERS** that if Plaintiff files an Amended Complaint within the time permitted, the Amended Complaint is referred to Magistrate Judge Evangelista for further review; and the Court further

**ORDERS** that if Plaintiff does not file an Amended Complaint, the case is returned to Magistrate Judge Evangelista for any orders relating to service of the Complaint on Defendant Waste Management, Inc.; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2693776

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.